EMMA E. LEAVER

*v.*

JOHN D. GORMAN.

1. Equity will restrain the violation of a covenant entered into by a grantee, restrictive of the use of lands conveyed, not only against the grantee covenantor, but also against all subsequent purchasers with notice of the covenant, whether it run with the land or not; but, if the original grantor does not bind himself, then his grantee, having no right of action against him, cannot pursue any other grantee to whom the original grantor may subsequently convey the whole or a part of the remaining lands.

2. Complainant lost her right to enjoin defendant from running a bottling factory in violation of a covenant restricting the use of land by acquiescence where for several years she did not seek to enforce it, but did not lose the right to enjoin an extension of the business.

---

On bill.

*Mr. Charles E. Cook,* for the complainant.

*Messrs. Collins & Corbin,* for the defendant.

STEVENS, V. C.

The complainant is the owner of two improved lots of land in Asbury Park, one on the north side of Sewell avenue and the

other on the south. The defendant is the equitable owner of two lots on the north side of the same avenue, one a lot twenty-four by one hundred, known as lot "No. 141," and the other a vacant lot adjoining, fifty by one hundred. On defendant's first-mentioned lot, for several years prior to 1901, there stood a livery stable. In 1901 the livery business was discontinued and the then owner commenced to make and bottle mineral water, sold principally to summer residents of the resort. The manufacture, conducted on a small scale, changed hands and was finally acquired by defendant, who proposes to erect on his vacant lot a storeroom and other conveniences to be used in connection with this business.

The complainant objects to this contemplated use on the ground that Sewell avenue is a residence street and that the deeds conveying lots on it contain, *inter alia,* a covenant against the erection of factories.

As is well known, the park was laid out by Mr. Bradley, its founder, about the year 1872. In nearly all the deeds which he made he caused to be inserted the following, or a very similar covenant:

"The said party of the second part, for himself, his heirs, executors, administrators and assigns, covenants that he and they shall never use said premises, or cause the same to be used, for the sale of intoxicating liquors or for any manufacturing purposes whatever, and that no hogpen shall ever be erected thereon."

This covenant, so far as Mr. Bradley was concerned, was replaced by the similar and somewhat broader covenant contained in the quit-claim deed from Bradley to Sexton, the then owner, made in 1889, but inasmuch as the complainant had acquired from Bradley title to one-half of lot 158 and lot 159 on May 1st, 1876, the benefit of the covenant in the Taylor deed passed to her at that time and was unaffected by the subsequent quit claim of 1889.

This covenant is contained in the deeds both in complainant's and defendant's chain of title and the question is whether complainant is in a position to enforce the covenant against the defendant.

The law has been so completely settled in a series of decisions (*Brewer* v. *Marshall, 19 N. J. Eq.* (*4 C. E. Gr.*) *537; Lennig* v. *Ocean City Association, 41 N. J. Eq.* (*14 Stew.*) *606; De Gray* v. *Monmouth Beach Club House, 50 N. J. Eq.* (*5 Dick.*) *329; Mulligan* v. *Jordan, 50 N. J. Eq.* (*5 Dick.*) *363; Hayes* v. *Waverly and Passaic Railroad Co., 51 N. J. Eq.* (*6 Dick.*) *345; Trout* v. *Lucas, 54 N. J. Eq.* (*9 Dick.*) *361; Roberts* v. *Scull, 58 N. J. Eq.* (*13 Dick.*) *396; Ocean City Association* v. *Headley, 62 N. J. Eq.* (*17 Dick.*) *322*) that I have only to apply the principle.

The law is this: A court of equity will restrain the violation of a covenant entered into by a grantee, restrictive of the use of lands conveyed, not only against the grantee covenantor, but against all subsequent purchasers having notice of the covenant, whether it run with the land or not. There is, however, this distinction: The original grantor, in imposing the covenant upon the grantee, either may or may not bind himself. If he does not bind himself, then his grantee, having no right of action against *him,* cannot pursue any other grantee to whom he may subsequently convey the whole or a part of the remaining lands. In the case of the lands in question, Mr. Bradley chose to remain unbound. In none of the multitude of deeds offered in evidence does it appear that he covenanted to impose the restrictions in question upon the lands remaining in his hands. The consequence is that while a subsequent grantee of Mr. Bradley of one lot could enforce the covenant against a prior grantee of another lot, a prior grantee could not enforce the covenant against a subsequent grantee. The complainant attempted to take the case out of the operation of the general rule by proving that it came within the exception to it, prevailing where a general scheme or plan is shown, according to which every purchaser is to be subject to, and to have the benefit of the covenant as against every other purchaser, prior or subsequent. In this attempt the complainant failed, for no such scheme, obligatory upon Mr. Bradley, was proved. It appeared, on the contrary, that in the case of this very street, Mr. Bradley had, in several instances, exercised the right to convey without imposing upon himself this or a similar covenant.

It so happens that in the case of defendant's unimproved lot, the Bradley deeds, under which complainant derives title, were given *before* the Bradley deed under which defendant derives title; consequently, complainant is not in a position to enforce the covenant against the owner of this lot.

As to the lot already used as a mineral water factory, it so happens that complainant's is the later title, and consequently, she *is* in a position to enforce the covenant, unless she and her predecessors have lost the right to do so by permitting defendant and his predecessors to build up and carry on the business for the past five years, and she possesses this right, scheme or no scheme; for the covenant required by Mr. Bradley of his grantee of lot 141 was undoubtedly intended for the benefit of the remaining land, of which complainant's predecessor in title afterwards obtained a part.

I think, however, that complainant has, by her acquiescence, lost her right to an injunction, so far, at least, as to prevent the carrying on of the business as it has been carried on in time past. It is to be remembered that complainant has no legal right whatever. The burden of the covenant does not run with the land. Her right is purely equitable. In this respect it differs from that protected in *Gawtry* v. *Leland, 40 N. J. Eq. (13 Stew.) 323.* "Very little, in cases of this character," said Lord Eldon, in *Roper* v. *Williams, 1 Tur. & Rus. 18,* "is sufficient to show acquiescence, and courts of equity will not interfere unless the most active diligence has been exerted throughout the whole proceeding." On this principle Vice-Chancellor Emery denied relief in *Trout* v. *Lucas, supra. Tichenor* v. *Wilson, 8 N. J. Eq. (4 Halst.) 197,* cited in defendant's brief, was the case of an interlocutory injunction, to the refusal of which different considerations apply, but *Sayers* v. *Collyer, 28 Ch. Div. 103,* seems to be very much in point. It was the case of a beer shop; against the use of which, as such, plaintiff was protected by covenant, which, however, he had not sought to enforce by legal proceedings until the expiration of three years. It was held that his acquiescence had barred his right to equitable relief. I think the proof of acquiescence in the case in hand is as strong, if not stronger, than the proof in that.

The reason why the complainant here did not proceed is apparent. The business, as conducted, was in no sense a nuisance to the neighborhood. It may be doubted whether it was not less objectionable than the livery business which had preceded it. No exterior alteration was made in the building. The proof shows that the neighbors were not disturbed. The husband of complainant was himself engaged in carrying on, in this residence street, the business of a plumber, just across the way.

But it seems to me that if the complainant's right is to be regarded as lost through acquiescence, this acquiescence can only be deemed to extend to the business as it has been conducted in the past—not to an increased business where more steam or other power may be employed; where more teams may be used, and more noise and vibration result. *Bankart* v. *Houghton, 27 Beav. 425.* I have refused an injunction restraining the erection of a storehouse on the adjoining lot for the reason, already stated, that complainant has no standing to object to it. The erection of this storehouse and the equipment of it in the manner proposed will, however, give an opportunity for a considerable enlargement of the output within the building in which the manufacture is conducted. I think, therefore, that the defendant is, under the circumstances, entitled to an injunction to restrain an extension of the business in this building or on the lot on which it stands. Neither side should have costs against the other.