The parties to this litigation are next door neighbors on Lenape Island, Indian lake, a summer resort in Morris county. Their homes are of the ornate and costly bungalow type, facing the lake. The defendant has recently built, attached to her bungalow, a frame garage which approaches *Page 567 
Lenape trail (Indian fashion, they call their streets trails), within three and sixty-two hundredths feet, which complainant claims to be in violation of a restrictive covenant of a neighborhood scheme and wants it removed. The complainant's garage is also attached to her bungalow, and, like all others of her neighbors, sets back from the trail at least twenty feet, the distance required by their mutual covenants. The long stretch of land facing on the trail, laid out into lawns, adds materially to the beauty of the homes, and the defendant's intrusion obstructs the prospect and spoils the scenic effect. The lot of the complainant is number 30 and the defendant's number, 31, of a subdivision of a tract of land on the south shore of Indian lake, laid out into building lots by the Arthur D. Crane Company, mapped and filed, and conveyed by reference to the map and lot numbers. Lenape Island contains thirty-one lots of the tract, all bordering on Lenape trail, which extends northerly through the center of the island and to the main shore by a bridge at its most southerly point. The defendant's is the most southerly on the easterly side of the trail, at the water's edge. All the lots have been conveyed subject to residential use, and "that no part of the body of any house [exclusive of porches] or the body of any other building shall be nearer the street or water line than twenty feet [excepting that on lake front lots a dock or open summer house may be built on the water front, but shall not extend over twenty feet outside of the shore line]. Also, that no part of any building shall be nearer than three feet to either side line of the lot on which it is built. This restriction may be varied from on written consent of the said party of the first part in cases where a lot is less than one hundred feet in depth."
The restrictions are set out at length in some deeds — they are in the defendant's; in others they are incorporated by reference "as set forth in other deeds for lots on said map." Plotting the tract into streets and lots, filing of the map, and sales of lots by reference to it, the uniformity of the restrictions and the universality of their application, justify the finding of a scheme of restrictions for the common benefit. DeGray v.Monmouth Beach Club House Co., 50 N.J, Eq. *Page 568 329; Scull v. Eilenberg, 94 N.J. Eq. 759. The complainant may rest her claim to relief on the law of community scheme, as well as on the defendant's covenant to the common grantor, for it was entered into before the complainant took title and inures to her.Leaver v. Gorman, 73 N.J. Eq. 129.
The defendant claims to have the written consent of the company, the common grantor, to put up her garage on its present site, and contends that the consent is valid and effectual under the provision of the covenants that "this restriction may be varied from on written consent of said party of the first part [the company] in cases where the lot is less than one hundred feet in depth." The defendant's lot is ninety-four feet front on the easterly side of Lenape trail, and extends along the complainant's line one hundred and eight feet to the lake, and thence along the water edge northwesterly one hundred and forty-five feet to the trail — triangular. The two depth lines being each over one hundred feet, the defendant's lot does not come within the reservation either in letter or spirit. There are rectangular lots fifty to seventy-five feet in depth for which it was intended. Triangular, rectangular, or any other shaped lot of one hundred feet in depth is not within its purview. The company had not the power to modify. And the company did not give its consent in writing or otherwise. Herbert L. Close, vice-president of the company, wrote the defendant asking for the work of building the garage, presumably on its present location, and later, in June, 1926, sent a second and pressing letter. The next spring the "manager" of the company, brother of the vice-president, withdrew the request, stating that they thought they should not build the garage, indicating that they feared trouble between the company and the complainant, and suggested that she get in touch with other builders, naming them, whom they recommended. The letters prove the willingness of these officials to assist the defendant in breaching her covenant, not corporate dispensation of the performance of the covenant. The directorate of the company at that time was composed of Arthur D. Crane, Herbert L. Close and their respective wives. They could act only as a body, duly assembled. Modification of the covenant *Page 569 
called for the exercise, collectively, of their honest judgment. That was a limitation of the reserve power under the general scheme. Within that limitation the company could act, and failure to exercise reasonable judgment, amounting to an abuse of the power, would be restrained.
The defendant's bungalow already encroaches four feet on the restricted strip. It was built by the company when it owned the lot, but the fact that the company itself violated the covenant is not a license to the defendant to further and grossly impair its benefits. The defendant had plenty of room on her lot to locate her garage where it would neither violate the covenant nor offend her neighbors. She had ample warning and can only blame herself for being compelled to tear it down.
The complainant is entitled to a mandatory injunction.