Lydia Palmer, complainant-appellant,

*v.*

Circle Amusement Company, defendant-respondent.

[Submitted May term, 1941.  Decided October 20th, 1941.]

*Mr. Daniel J. Dowling, Mr. Samuel Backer* and *Messrs. Endicott & Endicott,* for the complainant-appellant.

*Mr. George A. Bourgeois,* for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

This is a companion case to *Dalstan* v. *Circle Amusement Co.,* decided contemporaneously herewith, *130 N. J. Eq. 354.* Much of the testimony taken at the final hearing in the *Dalstan Case* was, by consent of the court below and by stipulation of counsel, made a part of this record and the briefs here are correlated. Each suit is to restrain the defendant corporation from constructing, on the easterly side of Harrisburg Avenue north of Ventnor Avenue in Atlantic City, a theatre building that will completely fill the lot to the sidewalk line in violation of a deed covenant which, as the respective complainants contend, constitutes a neighborhood scheme. In the instant case Chancery found as a fact that there is not and never was a neighborhood scheme. We come to the opposite finding.

On and before December 15th, 1906, William H. Carroll and Charles R. Myers owned a tract of land bounded on the east by Trenton Avenue, on the south by Ventnor Avenue, on the west by Harrisburg Avenue and on the north by a waterway known as the "inside thoroughfare" from which there came a small inlet or basin into the heart of the tract. On the named date they filed a map showing the division of their land into lots facing on the several highways, with a bulkhead line running across the rear portions of the lots and with the basin abutting the rear lines of the lots and separating, by about 100 feet, the rear line of the Harrisburg Avenue lots from the rear line of the Trenton Avenue lots.

Before March 10th, 1910, Carroll and Myers had sold all of the Ventnor Avenue lots and a considerable number on Trenton Avenue but none on Harrisburg Avenue with the exception of one which lay at the rear of and was treated as a part of the Ventnor Avenue frontage. On that day they sold to Realty Sales Company all of the lands not theretofore conveyed out and in the deed, recorded March 14th, 1910, set up a covenant with the following restrictions (the portion pertinent to the pending litigation is italicized):

> *"That the front line of any building (except porches) to be erected on said lots shall not extend within fifteen feet of the front line of said lots;* that no building of a value less than $1,500 shall be erected on said lots; that all buildings shall be connected with the sewerage plant and that no drainage of any kind of filth into the said basin shall be permitted; that no beer, wines or intoxicating liquor shall be sold on said lots; that the tide in said basin in the rear of said lots shall be allowed to ebb and flow; that no obstruction shall be placed outside of the bulkhead line against the flow of the tide and that no buildings shall extend beyond the exterior building line as established on said plan."

It is conceded that the Ventnor Avenue lots were never subjected to the covenant and that the covenant has been abandoned as to the few Trenton Avenue lots to which it originally applied. All of the lands, whether of complainant or defendant, which are involved in this litigation front on Harrisburg Avenue, were conveyed by the mentioned deed and were within the terms of the covenant.

On May 24th, 1910, Realty Sales Company conveyed two lots to Jerry H. Brode, who retained them until his death. On December 28th, 1939, Brode's estate sold them to the defendant herein; and it is with so much of the proposed construction as is to be put on this land (and on a portion of an adjoining lot) that we are now concerned. In 1922 Brode, as owner of that land, brought suit in the Court of Chancery to enforce, by mandatory injunction, the above mentioned building restriction against the owners of the present Dalstan lands, also on the easterly side of Harrisburg Avenue, with the result that that court found that the restriction on the building space was part of a general plan which

had been adopted for the improvement of the property by a uniform scheme, that the abandonment of the plan with respect to the Trenton Avenue tract did not affect the enforcement of the restrictions on the Harrisburg Avenue tract, that certain alleged violations consisting of a dwelling near the water front at the opposite end of the tract, without the specified setback, and a small garage (as against the restriction prohibiting erections costing less than $1,500), were not an abandonment of the scheme and the court granted the complainant such ample injunctive relief as resulted in the moving and setting back of the completed brick and frame dwelling house a distance of 7½ feet. *Brode* v. *Smith, 118 Atl. Rep. 742* (not officially reported). Harrisburg Avenue was then and is still a residence area, and no buildings have been constructed on so much of the tract as fronts thereon since the Brode litigation with the exception of a single garage which was built well back of the fifteen foot restricted area. All of the deeds from the Realty Sales Company to subsequent grantees referred to the restrictions although they did not set them forth: a fact which appears by concession in the record. Defendant's answer to complainant's bill admits that the search of the defendant's title made at the time of the acquisition of the property necessarily revealed the deed from Carroll and Myers to the Realty Sales Company as a muniment in the title to the defendant's land and that defendant, in January of 1940, employed a contractor to undertake the construction of a building, the main part of which was to be less than fifteen feet from the front property line and a wall of which was to be within a few inches of that line, in violation of the restrictive covenants "all of which the defendant well knew." Defendant was on full notice.

The prayers for relief in the respective bills of complaint in the instant case and in the *Dalstan Case* were identical, and the entire framework of the bills is paragraph by paragraph and word for word precisely the same except for differences having to do with the varying ownerships and uses of the complainants' lands. Paragraph four of each complaint alleges:

"In and by the said deed from Wm. H. Carroll and Chas.

R. Myers to the said Realty Sales Co. there were contained certain restrictions and covenants known as improvement restrictions which provide: (Here follow the restrictive covenants quoted *supra*).

"There was thereby created a general neighborhood plan or scheme for the benefit of the owners of lots embraced therein and their grantees with consequent increased enjoyment and value to the said owners and their grantees."

Defendant's answer, filed June 4th, 1940, to that allegation in the Dalstan bill was:

"Paragraph 4 is admitted, except that Defendant says that the benefit to be derived from said general neighborhood scheme might be lost by a change in the neighborhood scheme, in violation of the scheme by a party to a suit, abandonment, or laches, which rendered its enforcement inequitable," but the answer to the bill in the instant case, filed only four months later, takes an altered position and although it "admits that the said Wm. H. Carroll and Chas. R. Myers in the platting of said lands and filing the platting thereof in the Clerk's Office of Atlantic County, and selling said lots subject to the building restriction, had in mind the intent to create a general neighborhood plan or scheme for the benefit of the owners of all of those lots platted on said map" nevertheless it "denies that by the sale of said lots, there was created a general neighborhood plan or scheme for the benefit of the owners of lots embraced therein and their grantees, with consequent increased enjoyment and value to the said owners and said grantees." The Chancery opinion in the *Dalstan Case* states that "All parties agree that the aforesaid restrictive covenant originated to effectuate a neighborhood scheme and that the title of both parties is encumbered therewith, unless in this case it is determined that there has been an abandonment thereof."

If a vendor, on selling, exacts restrictive covenants on the use of several plots, without putting himself under a corresponding obligation, it is a question of fact whether the restrictions are merely imposed for his own benefit and protection or are meant and understood to be for the common advantage of the purchasers and their assigns. *DeGray* v.

*Monmouth Beach Club House Co.*, *50 N. J. Eq. 329;
affirmed, 67 N. J. Eq. 731.*

The restrictive covenants were inserted in the deed which, as we have said, conveyed out all of the grantor's title in lands to be affected thereby. They stated neither the purpose to be served by the imposition of the restriction nor the period during which, nor the parties by whom, the restrictions should be enforced. We have not lost sight of the testimony by Mr. Carroll, recently given in this litigation, that the purpose was to protect the interest of himself and his fellow owner in certain purchase-money mortgages; nevertheless, having regard for the character of the neighborhood, the nature of the development, the history of the neighborhood reaction, the substantial compliance by the various owners with the restrictive covenants and with the earlier adjudication, we think that the covenants were intended to set up a neighborhood plan and have been generally so accepted and observed and that the setback restriction still subsists, a burden upon and a benefit to the properties of the Harrisburg Avenue neighborhood, including those of the defendant and of the complainant. If it is inequitable that a party should be permitted to use his land in a manner inconsistent with the contract entered into by his vendor and with notice of which he purchased (*DeGray* v. *Monmouth Beach Club House Co., supra* (at *p. 333*), how much more inequitable would it be for a party in like circumstance whose vendor had by Chancery decree enforced a neighborhood scheme, as such, against others at their great inconvenience and expense, to come into that same court and be given *carte blanche* upon the reasoning that there is not and never was a neighborhood scheme! The burden follows the benefit. *Sanford* v. *Keer, 80 N. J. Eq. 240.* That there was a clear benefit to defendant's lands in the scheme is demonstrated by the zeal which Brode displayed in enforcing the covenant.

Inasmuch as Carroll and Myers, the original owners of the entire tract, sold all their remaining lands in the deed which contained the covenants there was no occasion for the application of the rule stated in *Scull* v. *Eilenberg, 94 N. J. Eq. 759,* and elsewhere, that there should be a reciprocal covenant

by the vendor that he will insert the provisions in all deeds for remaining lots similarly situated. The Harrisburg Avenue section was and is a neighborhood detached from Trenton Avenue and forms a neighborhood unit within which the restriction is universal and reciprocal. The advantage of the restriction to that neighborhood is, we think, apparent. The contribution to comfortable and enjoyable living in having one's residence set back from the annoyances of vehicular and pedestrian traffic and in having the remaining, and particularly the adjoining, structures on the same side of the street held to the same recessed building line is obvious. It is a fair presumption that the several purchasers paid an enhanced price for their properties in reliance upon the general plan. Since all have the advantage it follows that all are subject to the reciprocal burden; and it would be inequitable to enforce the covenant for the benefit of one property so long as the owner wishes and then, simply because that owner would like to change the character of use, to dissolve the covenant against the protest of other owners.

We conclude that an injunction should issue as prayed to enforce the building line restriction. The decree below will be reversed, and the record remitted to Chancery to that end.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.