SAMUEL WEINSTEIN, PLAINTIFF-APPELLANT, v. IDA SWARTZ ET AL., DEFENDANTS-RESPONDENTS, AND CHARLES B. GALLAGHER ET AL., DEFENDANTS.

Argued October 10, 1949—Decided October 31, 1949.

*Mr. Theodore D. Parsons* argued the cause for the appellant (*Messrs. Abramoff & Drazin,* attorneys).

*Mr. Maurice A. Potter* argued the cause for the respondents (*Messrs. Beekman & Beekman,* attorneys for all respondents, other than Charles and Ellen C. Wengerter).

The opinion of the court was delivered by

ACKERSON, J.   This suit was brought under the provisions of *R. S.* 2:76–38 *et seq.,* to quiet the title to a plot of land against restrictions imposed by a former owner in the chain of title.   The lot in question is located at the northwest corner of Reckless Place and Broad Street in the Borough of Red Bank.   It was originally part of a tract purchased by Benjamin J. Parker in 1901, and was conveyed by him to Gustave A. Schwartz in 1907, by a duly recorded deed, subject to restrictions which limited its use to a one family residential dwelling with setback lines, which restrictions were made to run with the land.   A one family dwelling was erected on this lot in conformity with these restrictions, and the property was finally acquired by the plaintiff, Samuel Weinstein, in 1947, pursuant to a contract of sale which provided that the lot was being sold subject to restrictions of record, but the deed which followed made no reference thereto, although the plaintiff concedes that he had actual notice thereof.

The factual background which led up to this litigation may be briefly summarized.   The plaintiff's lot has a frontage of

112.5 feet on Broad Street and 200 feet on Reckless Place which street runs westerly about 1,000 feet to Maple Street. It was originally one of sixteen building lots which the aforesaid Parker plotted out of three separate tracts of land which he owned on Reckless Place. Parker purchased the first tract, situated on the northwest corner of Reckless Place and Broad Street, in 1901, as hereinabove stated, and subsequently divided it into three lots, one of which is the property in question now owned by the plaintiff. In 1905 he purchased at sheriff's sale two more tracts of land situated on the south side of Reckless Place, from Maple Street to Broad, but separated by a plot of 52 feet frontage on Reckless Place, which plot was not restricted. These two separate tracts of land were divided by Parker into thirteen lots, which, with the three lots already carved out of the first tract above mentioned, made a total of sixteen lots owned by him on Reckless Place.

The first sale made therefrom by Parker was in August, 1905, consisting of a lot 50 feet wide along Reckless Place, to which was added in March, 1906, an adjoining strip 10 feet in width, presumably to enable the grantee to have more space for building purposes. (This is referred to as the Smock property.) These two lots were sold without restrictions, and are located on the south side of Reckless Place at approximately the center of the block. Also two other lots at the extreme western end of the block at Maple Street were sold by Parker in February, 1911, without restrictions as to their use. They are separated, however, from his other lots to the eastward on the same side of Reckless Place, by the plot of ground 52 feet in width (never owned by Parker), which divided the two original tracts purchased by him at the sheriff's sale hereinbefore mentioned.

All of the remaining twelve lots were conveyed by Parker at various intervals from 1906 to 1911 inclusive. All of them, with the single exception hereinafter noted, plus five lots on the north side of Reckless Place owned by Parker's wife, were sold by them subject to covenants restricting the use thereof to one family residential purposes and providing for setbacks

which varied slightly. The sole exception just referred to, is a lot on the southwest corner of Reckless Place and Broad Street, opposite the plaintiff's property, fronting 200 feet on Reckless Place and 140 feet on Broad Street, which lot was sold by the common grantor in 1910 to the First Presbyterian Church without restriction as to the character of the use upon that portion of the lot fronting on Broad Street for a depth of 150 feet along Reckless Place, but providing for setbacks and other requirements. The westerly 50 feet of this lot was restricted in the same manner as the other restricted lots.

The plaintiff, Weinstein, is desirous of freeing his lot of restrictions in order to erect a business establishment thereon. The Vice-Chancellor, in dismissing the complaint herein by order filed June 3, 1948, found that a neighborhood scheme of development had been established by the Parker conveyances; that the character of the neighborhood has not been changed, and that the restrictions imposed by the Parker deeds are still in existence and are valid and binding. An appeal was taken by the plaintiff to the former Court of Errors and Appeals on September 7, 1948, which appeal, by the transfer provisions of our new Constitution, is now before us for determination. ·

In support of his appeal, the plaintiff contends that by failing to impose restrictions for residential use upon five of the sixteen lots comprising the original Parker holdings, the grantor failed in the creation of a neighborhood scheme of development.

We do not agree with this contention. It is not necessary that all lots in an entire area be made subject to restrictions in order to constitute a neighborhood scheme. The absence of restrictive covenants by the common grantor in some of the properties conveyed by him may be evidence of an intent not to create a neighborhood plan but this evidence is not conclusive. There are other factors which must be considered. As stated in *Humphreys v. Ibach*, 110 *N. J. Eq.* 647, 652 (*E. & A.* 1932), whether such a plan has been established "is a question of fact to be answered not only by the wording of the deeds but by the surrounding circumstances

and the acts of the parties." *McComb v. Hanly,* 128 *Id.* 316 (*Ch.* 1940), reversed on other grounds, 132 *Id.* 182 (*E. & A.* 1942).

A restrictive covenant is a contract. *Rankin v. Brown,* 142 *N. J. Eq.* 180 (*Ch.* 1948). Any neighborhood scheme that flows from the terms thereof must to be effective and enforceable apply to all lots of a like character *brought within the scheme.* The consideration to each lot owner for the imposition of the restriction is that the same restrictions are placed upon the lots of others similarly located. Its universal character therefore is dependent upon reciprocal or mutual burdens and benefits shared by each lot owner brought within the orbit of the common neighborhood plan. *Klein v. Sisters, etc., Saint Elizabeth,* 101 *N. J. Eq.* 761, 766 (*E. & A.* 1927); *Scull v. Eilenberg,* 94 *N. J. Eq.* 759 (*E. & A.* 1923).

Complete uniformity of restrictions is not required, they may vary in different sections of a tract in accordance with the design of the original grantor. Thus one section may be set aside for stores, another for a railroad station or hotel, and another for private dwellings. *Sanford v. Keer,* 80 *N. J. Eq.* 240, 245 (*E. & A.* 1912); *Schreiber v. Drosness,* 100 *Id.* 591, 594 (*E. & A.* 1926); *Wickwire v. Church,* 142 *Id.* 174 (*Ch.* 1948); affirmed, 1 *N. J.* 384 (1949). It suffices if all the deeds for the lots making up any particular neighborhood group are made subject to uniform covenants in order that the benefits and burdens of the lots encompassed by the general scheme are subject to mutual burdens and benefits. *Sanford v. Keer, supra; Scull v. Eilenberg, supra; Humphreys v. Ibach, supra, p.* 653.

The Parkers never lived in this development and therefore the restrictions cannot have been made for his personal enjoyment. It is reasonably inferable that when Parker conveyed the first two lots without restrictions, he had not yet formulated any general plan for the development of the neighborhood, that intention arose subsequently. But it is significant that these two lots (the Smock property) were immediately improved by an expensive house which is still in existence.

There are no business establishments on Reckless Place, all of the residences conform substantially to the setbacks, and it is considered one of the best residential streets in Red Bank. That the common grantor intended to establish a neighborhood scheme in the easterly section of Reckless Place is inferable from his last three conveyances. On February 11, 1911, he sold without restriction the two lots at the far westerly end of Reckless Place which are not contiguous to the other lots, but on February 27, 1911, Parker conveyed a lot in the easterly section of Reckless Place subject to the restrictive covenants.

The two tracts from which all of the lots in the easterly portion of Reckless Place originated are contiguous and face each other. The area comprises a compact neighborhood group, and the restricted lots therein carry a common burden for the benefit of all. *Scull v. Eilenberg, supra, p.* 762. It is not necessary that the segegrated parcels lying outside of this area be included within the scheme. It is reasonably clear that the common grantor in making these lots in the easterly section of Reckless Place subject to the same covenants (except as to the portion of the church lot hereinafter dealt with) intended to create a neighborhood plan in that area which has been accepted not only by the lot owners who acquired title through him, but also by other property owners deriving title from other sources. The number of lots affected by the plan is no barrier to its establishment. In *Sandusky v. Allsopp,* 99 *N. J. Eq.* 61 (*Ch.* 1926), the court had no difficulty in applying and enforcing a neighborhood scheme of four lots out of eight lots abutting each other.

Nor does the lack of a restrictive covenant as to the character of use upon 150 feet of the 200 feet on Reckless Place conveyed to the Presbyterian Church preclude the establishment of a neighborhood plan. The deed from Parker and his wife to the church reads in part:

"THIRD: No Church, chapel, place of worship or any part thereof shall be constructed, erected, placed or maintained upon said land nearer than fifty feet to the westerly line of the above described lot."

Obviously the design of the parties was the use of this plot for church purposes, which was not considered detrimental to the residential benefits accruing from the community plan. Significantly a church was erected on this part of the property and it still serves its intended purpose. The restriction against business use of the remaining 50 feet frontage on Reckless Place, strongly suggests that the omission of such restriction from that portion of the lot actually occupied by the church was inadvertent. We do not consider this omission, under the attendant circumstances, such a departure from the general neighborhood scheme as to nullify its operation.

The second point raised by the appellant concerns the effect of a release of the residential restriction from a house and lot adjoining the church property, subsequently acquired by it for expanding church purposes. The specific question is whether or not such release by property owners on the south side of Reckless Place constitutes an abandonment of the neighborhood scheme.

This too we must answer negatively. The one family residence on this particular lot was purchased by the church and is presently used for a children's Sunday School, and the waiver of the residential requirements is to remain only so long as the Presbyterian Church owns the lot, but if it is re-sold, the restriction is to revert. Furthermore the testimony discloses that this release is effective only if the property is used for church purposes. Under these circumstances there was not such a degree of acquiescence in a violation or change in the character of the neighborhood that would amount to an abandonment or impairment of the benefits of the neighborhood plan. *Sanford v. Keer, supra, p.* 244; *Bowen v. Smith,* 76 *N. J. Eq.* 456, 462 (*Ch.* 1909). An immaterial violation which does not disclose an intention to abandon the restriction is of no avail to the complainant. *Pancho Really, etc., v. Hoboken Land, etc., Co.,* 132 *Id.* 15, 18 (*E. & A.* 1942); *Morrow v. Hasselman,* 69 *Id.* 612 (*Ch.* 1905). Not every infraction of a covenant will preclude the equitable right to enforce it or other covenants. *Hemsley v. Marlborough Hotel Co.,* 62 *Id.* 164, 172 (*Ch.* 1901); affirmed,

63 *Id.* 804 (*E. & A.* 1902). In a neighborhood scheme the equitable right to enforce the covenant enures to each purchaser, irrespective of the time of his purchase. *Bowen v. Smith, supra; Henderson v. Champion,* 83 *N. J. Eq.* 554 (*Ch.* 1914).

Lastly, appellant asserts that there has been a change in the neighborhood of such a character as to make the enforcement of the restrictions inequitable. Attention of the court is directed to the increased commercial activity in Red Bank, particularly on Broad Street and that three residences on contiguous lots lying to the north of the Weinstein property on Broad Street are used in professional or mercantile pursuits.

The business uses cited by the plaintiff do not, however, touch upon or affect the restricted area of Reckless Place which still retains its residential characteristics throughout its entire length. Plaintiff himself admitted that he knew of no violations on Reckless Place and that there are no business establishments in that area. It is only where the influence of a change in the character of the surrounding neighborhood is such as to clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant that equity will deny its enforcement. *Sandusky v. Allsopp, supra, p.* 64; *Frick v. Foley,* 102 *N. J. Eq.* 430 (*Ch.* 1928); affirmed, 110 *Id.* 573 (*E. & A.* 1932); *Humphreys v. Ibach, supra; Wickwire v. Church, supra.* But where the change does not conflict with the essential purpose of the restrictions and the benefits therefrom remain unimpaired equity will prevent a violation. *Sanford v. Keer, supra; Scillia v. Szalai,* 142 *N. J. Eq.* 92 (*Ch.* 1948). See, also, *Friedman v. Cicoria,* 140 *N. J. Eq.* 404, 407 (*E. & A.* 1947); 14 *Am. Jur.* (*Covenants*), § 302, *p.* 646, *et seq.;* 4 *Pomeroy* (*Equity Jur.*), § 1295, *p.* 855; 21 *C. J. S.* (*Covenants*), § 75, *p.* 935; *Notes,* 4 *A. L. R.* (*2nd*) 1170 *et seq.*

While the plaintiff introduced testimony and exhibits tending to show increased business development along Broad Street, the neighborhood in the immediate vicinity of Reckless Place appears to be still primarily residential in character.

Whatever merit may be attached to the appellant's claim of a neighborhood change on Broad Street cannot avail him as to exclusively residential Reckless Place. This restricted section is a residential oasis of first class private dwellings detached from the annoyances of commercial activity—a comfort for which the defendants have presumably paid enhanced prices. *Cf. Cassidy v. Kruvant,* 97 *N. J. Eq.* 372 (*E. & A.* 1925); *Palmer v. Circle Amusement Co.,* 130 *N. J. Eq.* 356 (*E. & A.* 1941). In *Frick v. Foley, supra,* a covenant against business in a restricted neighborhood was enforced against the defense that business enterprises had grown on the opposite side of the street and the same result, under similar circumstances, was reached in *Cassidy v. Kruvant, supra,* and in *Humphreys v. Ibach, supra, p.* 653.

There have been no substantial changes on Reckless Place for many years except for the addition of a few homes, and the restrictions are performing their intended function of repelling the invasion of business and maintaining the neighborhood scheme. *Cf. Speidel v. Weiner,* 129 *N. J. Eq.* 434, 436 (*E. & A.* 1941). The restrictive covenants are in full force and effect and binding upon the plaintiff who cannot now claim surprise or hardship since he purchased his lot on Reckless Place in 1947 with full notice and knowledge of their existence.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.