15 N.J. Super. 215 (1951)
83 A.2d 239
HOUSTON PETROLEUM CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
AUTOMOTIVE PRODUCTS CREDIT ASSOCIATION, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 23, 1951.
Decided August 30, 1951.
*219 Before Judges McGEEHAN, SMALLEY and HANEMAN.
Mr. Melvin J. Koestler argued the cause for appellant (Messrs. Koestler & Koestler, attorneys).
Mr. William C. Nowels argued the cause for respondent (Messrs. Stein & Stein, attorneys).
HANEMAN, J.S.C.
On April 15, 1947, Byrnes Realty Company (hereafter referred to as Byrnes), was the owner of 34 acres of land in the City of Linden, New Jersey, having a frontage of 2,093 feet on State Highway No. 25. Under the zoning ordinance of the City of Linden then in effect, said property was zoned for business and two-family residences. The said Byrnes, conceiving that because of the location of the property, it had become unsuitable for residences or normal business purposes, and that for its most efficient utilization it should be used for light industry, applied to said City of Linden to change its zoning ordinance. The City of Linden agreed that if certain specific restrictive covenants that would run with the land were voluntarily created by said Byrnes it would amend the zoning ordinance to the end that the use of the property for light industry would be permitted.
On April 15, 1947, Byrnes executed a "covenant and agreement" under the terms of which it provided generally: (1) no building should be constructed closer than 75 feet from *220 State Highway No. 25; (2) in the event any other streets are dedicated in said tract, every building should be set back no less than 50 feet from the building line on said street; (3) any buildings constructed upon said tract should have the front facing the public street finished with stone, finished brick, terra cotta, glass, finished metal or finished plastic, or a combination of such materials, and that if the side of said building be so constructed that it shall face upon a public street, that side shall as well be constructed of similar materials; (4) the provisions of the foregoing provision No. 3 shall not apply to buildings constructed in the rear of any such building; (5) "when any building shall be constructed upon any portion of said lands and premises, the owner of the portion of the land on which such building is constructed shall cause that portion of said land owned by him and lying between the Northerly line of the right-of-way of State Highway No. 25 and the seventy-five (75) foot setback line hereinbefore provided for to be seeded and suitably planted, excepting, however, such part of said area (not to exceed fifty (50%) per cent thereof) as shall be constructed as and used for driveways and parking space"; (6) in the event that the above described premises should be divided and portions thereof sold, so that portions of said lands should come to be owned by two or more separate owners, then to a depth of 150 feet from the northerly line of the right-of-way of State Highway No. 25 no building or part of any building should be constructed closer than 12 1/2 feet to the sideline boundary between portions of said lands owned by separate owners; (7) the covenants and restrictions should become effective as and when the above described lands should be reclassified so that the same should come within and be subject to the provisions of the light industrial district of the zoning ordinance, and shall continue in force and effect so long as said premises shall be zoned and used for light industry, subject to the following limitations:
"(a) Said covenants and restrictions may be released or modified at any time by agreement in writing between the City of Linden *221 and the owner or owners of all or all portions of said lands and premises.
(b) Said covenants and restrictions shall terminate on April 1, 1977."
(8) "these covenants and restrictions shall run with the land and shall bind Byrnes Realty Company and its successors and its grantees of all or any portion or portions of the above described lands and premises for the period aforesaid; provided, that if Byrnes Realty Company and/or its successors shall sell and convey any portion or all of said lands and premises and a grantee or grantees shall violate said covenants and restrictions, then the respective grantee or grantees who shall violate said covenants and restrictions shall alone be liable in damages and Byrnes Realty Company and any other grantor shall not be liable in damages for the violation of such covenants and restrictions by such grantee or grantees."
The City of Linden did thereupon amend its zoning ordinance as theretofore agreed.
On March 29, 1948, Byrnes conveyed the entire tract to Industrial Land Corporation, subject to said covenants and restrictions. On the same date, Industrial Land Corporation conveyed the entire tract to Macner Realty Company (hereafter referred to as Macner), subject to the said covenants and restrictions.
On July 1, 1949, one Morton Sand, agent and representative of the plaintiff, which was desirous of constructing what it termed a modern type of mammoth gasoline station, approached said Macner with a view of purchasing 300 feet of frontage on said State Highway No. 25. Sand represented that the plaintiff would be interested in said purchase only if the restriction designated No. 5 above were modified so that plaintiff would not be obliged to use the said 75 feet adjacent to said highway as there provided, but could use it for the purpose of a gasoline station. Said Sand was desirous that said restrictions continue in effect on the balance of the *222 1,793 feet of frontage in order that it not have competition in the immediate vicinity.
Thereafter Macner, still being the owner of the entire tract, applied to the City of Linden, and upon receiving its consent, executed a supplemental "covenant and agreement" dated July 19, 1949, reaffirming all of the provisions of the prior agreement dated April 15, 1947, but releasing the 300 feet above referred to from the provisions in paragraph 5, insofar as the same provided as follows: "That the 75' setback area shall be seeded and suitably planted and that the driveways and parking space in said area shall not exceed 50% thereof." This agreement included an additional provision, which reads as follows:
"3. The foregoing premises shall also be subject to the further restriction and covenant and the same shall not be used as a truck terminal and shall not be used as a place where vehicles are to be permitted to park or remain for a period longer than required for the servicing of such vehicles in the usual course of business of a gasoline service station."
On August 1, 1949, the said Macner conveyed to Morton Sand the property now owned by the plaintiff, which was eventually conveyed to the plaintiff, both of which conveyances were subject to the covenants and restrictions contained in the original agreement and the supplemental agreement.
In April, 1950, appellant entered into an agreement with Macner to purchase an additional 100 feet adjoining the above referred to 300 feet theretofore purchased by appellant. Conveyance of this plot was actually made on May 16, 1950. This latter 100 feet was conveyed subject to all of the provisions of the original agreement of April 15, 1947. On May 12, 1950, plaintiff, having received word that some one contemplated the purchase of additional frontage, with the intention of obtaining a modification of the original restrictions, advised Stein & Stein, attorneys for the present defendant, of the existence of said restrictions. On June 12, 1950, said Macner conveyed the premises here in question to the defendant "subject to restrictions and conditions of *223 record." It is admitted that the defendant had notice of the existence of said restrictions.
On July 11, 1950, the defendant obtained a building permit which exhibited its intention to violate the restriction designated No. 5 above referred to, insofar as the use of the 75 feet adjacent to the state highway was concerned. Plaintiff thereupon made application for an interlocutory injunction, which was denied by Judge Proctor, with the advice, however, that the defendant would proceed at its peril with its plans concerning the 75 feet adjacent to said state highway. The matter was thereupon tried before the Chancery Division and the court there determined that the plaintiff was not entitled to an injunction. From a final judgment to that effect, the present appellant appeals.
The appellant bases its claim upon the theory that the alleged restrictive covenant created an equitable easement. It does not rely upon the creation or existence of a neighborhood plan or scheme, although the learned court below did designate it a neighborhood plan or scheme.
The nature of a covenant restrictive of the use of real estate has been ably defined in Welitoff v. Kohl, 105 N.J. Eq. 181, 147 A. 390 (E. & A. 1929), where the court said, at page 185:
"We think that in adding this condition to the decree the learned vice-chancellor lost sight of the essential nature of the equitable restriction resulting from a restrictive covenant, and confused it with the estate or interest in land which exists in the case of a legal easement. The latter, generally defined as `a liberty, privilege, or advantage without profit, which the owner, as such, of one parcel of land, may have in the lands of another,' is said to lie `in grant' and is in fact a legal estate arising from a grant (actual or implied) of an interest in the survient property. The restriction resulting from a restrictive covenant, on the other hand, is not an estate in land at all, but is a pure creature of equity arising out of contract and (as applied against a subsequent grantee with notice) resting upon the equitable principle, as I understand it, that where an owner of land has purchased it with notice that a predecessor in title, as a part of the consideration which the latter paid for it, covenanted that it should or should not be used in a designated way in order that the use and enjoyment of other land of the party from whom *224 he bought should be thereby benefited, it would be inequitable to permit such owner, while enjoying the fruits of and claiming under the former grant, part of the consideration for which was the benefit promised by the covenant, to destroy such benefit by violating the covenant. The sole purpose of the restriction is to protect the benefit contracted for by the covenant, and it will not be enforced for any other purpose."
See also 14 Am. Jur. 608.
A valid, enforceable restrictive covenant may be created either by the express written agreement of the grantor or by his creation of a neighborhood scheme.
The general rule deducible from the cases on the enforceability of such restrictive covenants was aptly stated in Leaver v. Gorman, 73 N.J. Eq. 129, 67 A. 111 (Ch. 1907), at page 131, as follows:
"The law is this: A court of equity will restrain the violation of a covenant entered into by a grantee, restrictive of the use of lands conveyed, not only against the grantee Covenantor, but against all subsequent purchasers having notice of the covenant, whether it run with the land or not. There is, however, this distinction: The original grantor, in imposing the covenant upon the grantee, either may or may not bind himself. If he does not bind himself, then his grantee, having no right of action against him, cannot pursue any other grantee to whom he may subsequently convey the whole or a part of the remaining lands."
See also Coudert v. Sayre, 46 N.J. Eq. 386, 19 A. 190 (Ch. 1890); McNichol v. Townsend, 73 N.J. Eq. 276, 67 A. 938 (Ch. 1907); Clarke v. Kurtz, 123 N.J. Eq. 174, 196 A. 727 (E. & A. 1937).
But where the grantor-covenantee does bind himself, and the restriction is as well for the benefit of the grantee-covenantor, the latter may enforce the covenant as against the original grantor or a subsequent purchaser from said original grantor.
In Wootton v. Seltzer, 83 N.J. Eq. 163, 90 A. 701 (Ch. 1914), the court said, at page 167:
"There can be little, if any, difference in principle between a restrictive covenant made by a vendee for the benefit of remaining *225 land of his vendor, and one made by a vendor touching his remaining land for the benefit of his vendee. Both are held to be enforceable by a purchaser of the land for the benefit of which the covenant has been made against a purchaser of the restricted land who is chargeable with notice of the covenant."
See also Lister v. Vogel, 110 N.J. Eq. 35, 158 A. 534 (E. & A. 1931); Beattie v. Howell, 98 N.J. Eq. 163, 129 A. 822 (Ch. 1925); 26 C.J.S. 167.
The general rule is that when the original grantor-covenantee does not expressly bind himself to include restrictive covenants in subsequent conveyances that a prior purchaser is denied relief as against a subsequent purchaser from the common grantor. It is generally then presumed that the restriction was for the sole benefit of the grantor's remaining lands.
The question of the establishment of a neighborhood plan or scheme becomes important only when the covenantee did not so expressly bind himself. When such a plan or scheme is found to exist, the right to enforce is had by every owner, whether title was acquired prior or subsequent to that of the alleged violator. This is an exception to the foregoing general rule. The theory of the enforceability of a restrictive covenant arising out of such plan or scheme is based upon the original intent to so restrict, and the mutual beneficial results obtained by all grantees regardless of the time of acquisition of title.
If, therefore, there was here, as held by the court below, a neighborhood scheme, the appellant could enforce the covenant regardless of the date of its acquisition of title from the common grantor as it could if it were an equitable easement for its benefit, to which the grantor bound himself. Beattie v. Howell, supra.
Such a plan or scheme may be created in a number of ways. In Scull v. Eilenberg, 94 N.J. Eq. 759, 121 A. 788 (E. & A. 1923), the court said, at page 771:
"The most complete way, of course, is by a reciprocal covenant, whereby the grantor covenants to insert, in apt language, like covenants *226 in all deeds of his remaining lots or lands for the common benefit of all of his grantees and their assigns. Another way is for him to offer his lots for sale, and to sell them, on the representation that all lots will be conveyed subject to like covenants for the common benefit, in which case purchasers with notice or knowledge will be bound by the covenant. But, in the absence of either of these methods (as was the case here), the courts will only spell out such a scheme from a plan of lots and sales therefrom where all the deeds from the common grantor for the lots making up any particular neighborhood group of common benefit therefrom, are made subject to the common covenant. If, under these circumstances, the covenant is omitted from a deed of one lot so located that a violation on that lot of the provisions of the covenant would deprive the other lots of the benefit to be derived by them from the common observance of the restriction, there is, in the absence of knowledge or notice of the scheme on the part of the grantee in the deed for such omitted lot, a failure to make out a neighborhood scheme, at least as to that lot and as to such other lots as would lose the benefit of the scheme if it were violated on the lot not subjected to the covenant."
In order to effectively create such a plan or scheme, to be legally effective it must have certain characteristics. In Klein v. Sisters, &c., Saint Elizabeth, 101 N.J. Eq. 761, 139 A. 174 (E. & A. 1927), the court said at page 766:
"A general scheme of restrictions to be effective and enforceable must have certain characteristics. It must be universal, that is, the restrictions must apply to all lots of like character brought within the scheme. Unless it be universal it cannot be reciprocal. If it be not reciprocal, then it must as a neighborhood scheme fall, for the theory which sustains a scheme or plan of this character is that the restrictions are a benefit to all. The consideration to each lot owner for the imposition of the restriction upon his lot is that the same restrictions are imposed upon the lots of others similarly situated. If the restrictions upon all lots similarly located are not alike, or some lots are not subject to the restrictions while others are, then a burden would be carried by some owners without a corresponding benefit. The burden follows the benefit, and where there is no benefit there should be no burden."
See also Scull v. Eilenberg, supra; Weinstein v. Swartz, 3 N.J. 80, 68 A.2d 865 (Sup. Ct. 1949).
Although it is generally required that the restrictions must be uniform, this does not connote that the restrictions *227 on every lot in a neighborhood need be identical. To be fatal, a lack of uniformity in the restrictions as imposed must be such as to wholly or partially destroy the scheme so as to neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant. The mere fact of variations in the covenants means nothing unless it would be inequitable by reason thereof to enforce the restrictions. Sanford v. Keer, 80 N.J. Eq. 240, 83 A. 225 (E. & A. 1912); Humphreys v. Ibach, 110 N.J. Eq. 647, 160 A. 531 (E. & A. 1932); McComb v. Hanly, 128 N.J. Eq. 316, 16 A.2d 74 (Ch. 1940); (reversed on other grounds, 132 N.J. Eq. 182, 26 A.2d 891 (E. & A. 1942); Palmer v. Circle Amusement Co., 130 N.J. Eq. 356, 22 A.2d 241 (E. & A. 1941); Weinstein v. Swartz, supra.
The covenant here involved was not only one which was for the benefit of the appellant, and by which the grantor had bound his other land, but which as well succeeded in establishing a neighborhood scheme.
There can be no doubt that it was for appellant's benefit, as was established by the testimony. Nor can there be any doubt that the grantor intended and actually did bind the balance of his lands, as is evidenced by the very verbiage of the covenant, the circumstances surrounding appellant's purchase, and the inclusion of said covenant by reference in respondent's deed.
As stated in Scull v. Eilenberg, supra, the grantor here assumed "the most complete way * * * whereby the grantor covenants to insert in apt language, like covenants in all deeds of his remaining * * * lands for the benefit of all his grantees * * *" and did create a neighborhood plan or scheme. Considering the total 2,093 feet of frontage, a restriction requiring 1,793 feet to be "seeded and suitably planted and that the driveways and parking space in said area shall not exceed 50% thereof" and permitting 300 feet thereof to be exempt therefrom, although restricted against the erection of a building, is not such a variation as would make it inequitable to enforce the restrictions.
*228 The respondent's contention that the change from the original covenant which relieved the appellant's land from the 75-foot seeding restriction amounted to an abandonment and placed said appellant in the position of a stranger is without merit. At the time of this change, Macner was still the owner of the entire tract. No stranger had acquired any interest therein. The change was made in accordance with the manner provided in the covenant itself. The execution of the supplemental agreement by Macner was a republication or renewal of the original terms, with modifications. It was tantamount to the de novo imposition of restrictions for the entire 34 acres. It merely demonstrated a reconsideration of a portion of the proposed plan. It must be as well remembered that appellant was the owner not only of the 300 feet upon which it had constructed its gasoline station, but an additional 100 feet, subject to the identical restrictions applicable to the respondent. So long as the owner of a tract upon which building restrictions have been established owns the entire tract he may modify them as he sees fit. 14 Am. Jur. 642.
Either upon the basis of grantor's express agreement in writing to bind his remaining land, or upon the existence of a neighborhood plan or scheme, appellant should succeed.
Defendant has argued that the City of Linden had no authority to enter into a contract to impose restrictions on the land in question. The City of Linden is not the party seeking to enforce the covenant. The appellant is a grantee-covenantor of the party who to all intents and purposes, by the agreement of July 19, 1949, imposed the restrictions. We are not concerned with the motivating influence which caused the covenant to be executed. We are rather concerned with the contracts of the Macner Realty Company and appellant and respondent respectively which resulted from the conveyance to them of their respective lands and the imposition as a term of said contracts of the covenants.
There is no merit to respondent's argument that the covenant effects an unlawful restraint of trade nor that it is vague or unreasonable.
*229 At the time of the argument, respondent moved for leave to use certain photographs as exhibits. These photographs were not in evidence in the original trial before the Chancery Division of the Superior Court. As a matter of fact, they were not taken until some time shortly before the argument before the Appellate Division. There seems to be no reason to admit them at this time. The motion for leave to use these photographs is therefore denied.
Since the respondent took title with notice and since, as stated by Judge Proctor in denying an interlocutory injunction, respondent proceeded with the construction in the questioned 75 feet at its peril, the judgment under appeal will be reversed and remanded, with directions that a mandatory injunction shall issue directing the removal of the improvements violating the covenant.