60 N.J. Super. 410 (1960)
159 A.2d 455
MARY ASHTON FURNESS, PLAINTIFF,
v.
LOUELLA B. SINQUETT; PAUL J. DE COURSEY, CATHERINE B. DE COURSEY; DAVID F. HEAL, BETTY HEAL; FLOYD L. RIDDLE, VIRGINIA N. RIDDLE; CHARLES ALLAN MICHEL, JOAN MICHEL; PHILLIP F. CALLAGHAN, GLADYS N. CALLAGHAN; SYDNEY H. LEWIS, ADELE W. LEWIS; WALDEN JONES RICHARDSON, LORNA P. RICHARDSON; CHARLES W. HARTER, STELLA M. HARTER; HERMAN E. STEIGER, GRACE W. STEIGER; ARTHUR W. JOHN, MARGARET M. JOHN; AND THE BOROUGH OF HADDONFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 24, 1960.
*411 Mr. William C. Davis (Messrs. Starr, Summerill & Davis, attorneys), appeared for plaintiff.
Mr. John L. Miller, Jr. (Messrs. Lewis, Hutchinson and Miller, attorneys), appeared for defendants.
WICK, J.S.C.
Plaintiff seeks a mandatory injunction by her first count to force the defendants to construct sidewalks in front of their homes, and by her second count to have them remove certain obstructions from the area of the public street between the curb line and the side line of the street.
*412 Plaintiff, with her husband, has for the past 23 years resided at 423 Peyton Avenue in the Borough of Haddonfield, and the defendants reside within a one- or two-block area on Woodland Avenue and Elm Avenue, and one defendant is the owner of a vacant lot situate at the southeasterly corner of Elm Avenue and Linden Avenue, three blocks from the residence of the plaintiff.
All the lands involved, as well as a large portion of this section of the borough, were owned by the West Haddonfield Land Company which filed three separate plans of the development thereof under dates of August 18, 1893, December 20, 1897 and September 1, 1899, and thereafter, by conveyances to either individuals or The Real Estate and Investment Company and dating from May 6, 1903 to September 22, 1914, the area covered by the lots concerned was conveyed, each conveyance containing certain conditions or restrictions which, as quoting from the deed in the plaintiff's chain of title, read as follows:
"Subject nevertheless to certain easements conditions and restrictions under which this conveyance is made by the said party of the first part and accepted by the said party of the second part for itself its successors and assigns in consideration of this conveyance do hereby covenant and agree to and with the said party of the first part its successors and assigns to do keep and perform that is to say That neither the said party of the second part nor its successors or assigns shall or will erect on any one of the lots herein conveyed any dwelling house which shall cost less than the sum of Twenty five hundred Dollars on Haddon Avenue nor less than the sum of Two Thousand on Peyton Avenue nor less than the sum of Eighteen hundred Dollars on Woodland Avenue nor less than the sum of Fifteen hundred Dollars on Elm or Estaugh Avenues that no building of any description whatever shall at anytime hereafter be erected within twenty five feet of the front fence line of lots on Peyton Elm and Estaugh Avenues and within thirty feet of the front fence line of lots on Woodland and Haddon Avenues being the front line of said lot excepting piazza veranda portico or other architectural embellishments attached thereto but that said space between said house line and street line shall be always left open and clear for the purpose of light and air that no cesspool shall be located nearer than ten feet from the division line of adjoining lots all cesspools shall be dug not more than four feet and shall be cemented sides and bottom and kept water tight and *413 odorless that no slaughter houses bone boiling establishments pig pen or anything of an offensive character shall be erected kept or maintained upon said premises and that the said party of the second part will construct and maintain a good sidewalk of a width not less than five feet on the street or streets bounding the land herein conveyed and shall also erect and maintain at their own proper cost and expense all division fences between land of the said party of the second part and land of the said party of the first part so long as the same shall be owned by the said party of the first part and it is further specially covenanted and agreed for the mutual benefit of the peace and comfort of the grantor and grantees of the said party of the first part as well as the good order of the community that the said party of the second part its successors shall not at anytime use or occupy the said premises or any buildings to be erected thereon or allow the same to be used or occupied for the manufacture storage or sale of any spirituous vinous fermented or other intoxicating liquors."
By mesne conveyances the lands covered by the above covenant have been conveyed to the respective parties. Since that time houses have been constructed on all the lands except that owned by Arthur W. John and Margaret N. John at the aforesaid southeasterly corner of Elm Avenue and Linden Avenue. It appears from the testimony of Robert F. Sampson, a title abstracter, that practically all the lots in the area covered by the maps upon which residences have been constructed contain the same restrictions as recited above and that all of the lands owned by the original developing company have been conveyed out.
It appears that except for the lands owned by the defendants, some lots on the northwesterly side of Elm Avenue, and two lots on the far end of Woodland Avenue sidewalks have been constructed.
Some of the defendants were called to testify and have acknowledged that they have assumed to improve the area between the curb line and the street line by the planting of grass, trees, shrubs and bushes, and that persons walking along the area in front of their homes are required to walk in the street beyond the curb. There is no denial on the part of the defendants that the covenant, at least similar to the one recited in full, is contained in their chain of title.
*414 Plaintiff contends that by reason of the covenant's being placed in all the deeds for the whole tract covered by the maps, a "neighborhood scheme" has been established and, except for the area owned by these defendants and a few others, this scheme has been followed by the respective owners, not only in the covenants dealing with minimum price, set-backs, construction of cesspools, and establishment of obnoxious or offensive businesses, but that all other lot owners have also constructed and maintained sidewalks, and that no manufacture, storage or sale of any intoxicating liquors has been made on any of the premises covered by the maps; and that, therefore, these defendants should be required, in furtherance of this "neighborhood scheme," to install sidewalks in compliance with the covenant, and also that by reason of the various obstructions of the area between the curb and the street line the defendants should be required to remove the same to permit passage by the walking public upon the area designated to be within the public street.
Defendants contend that the portion of the covenant which the plaintiff is attempting to enforce is, by its language, a personal covenant enforceable only against the original grantee of the respective lands or, in the alternative, is an affirmative covenant, the enforcement of which our courts will not require even upon the assumption that a "neighborhood scheme" has been shown, which they deny; and lastly, that the plaintiff has no standing as a private citizen to bring an action for the removal of an obstruction to a public way, this being reserved entirely to the Attorney General of the State of New Jersey.
A reading of the covenant sought to be enforced clearly shows that except for a portion thereof relating to the construction of a sidewalk and the boundary fences, concerning which there was no testimony or dispute, all the other covenants are of a negative character, each enjoining or restricting the defendants from doing certain things; whereas the covenant sought to be enforced is one which *415 requires the doing of something, the installation of the sidewalk. Defendants contend that the fact that the covenant sought to be enforced speaks only of the party of the second part, rather than using the words as contained in the so-called negative covenants, the party of the second part and/or nor, its successors or assigns specifically indicates that the covenant was intended only to extend to the immediate grantee of the covenantor. The case of Javna v. D.J. Fredricks, Inc., 41 N.J. Super. 353 (App. Div. 1956), is dispositive of this issue wherein Judge Clapp said, at page 359:
"It matters not that the parties omitted the word `assigns,' or some equivalent word, in the covenant  that is, failed to bind Zerman `and his assigns'; such an omission does not prevent the burden of the covenant from running."
and thereafter quoting R.S. 46:4-2, which reads as follows:
"When a deed uses the words `the said ____ covenants,' such covenant shall have the same effect as if it was expressed to be by the covenantor, for himself, his heirs, personal representatives and assigns, and shall be deemed to be with the covenantee, his heirs, personal representatives and assigns."
It would also appear that the plaintiff has proven a "neighborhood scheme" by showing that the grantor inserted, in each deed, like restrictions concerning the use of the lands from the original owner, the West Haddonfield Land Company, and as set forth in Scull v. Eilenberg, 94 N.J. Eq. 759 (E. & A. 1923), and thereafter followed by Palmer v. Circle Amusement Co., 130 N.J. Eq. 356 (E. & A. 1941), Olson v. Jantausch, 44 N.J. Super. 380 (App. Div. 1957), and Weinstein v. Swartz, 3 N.J. 80 (1949). However, the fact that such a "neighborhood scheme" has been shown does not alter the fact that the covenant sought to be enforced is an affirmative covenant rather than a negative or restrictive covenant.
*416 It appears that affirmative covenants have been enforced against the original grantee under the theory that the same is a personal covenant of a contractual nature, Earle v. New Brunswick, 38 N.J.L. 47 (Sup. Ct. 1875), Sparkman v. Gove, 44 N.J.L. 252 (Sup. Ct. 1882), but beginning with the English case of Spence's Case, 1 Sm. Lead. Cas. 145, 5 Coke 16a, and followed in New Jersey by Brewer v. Marshall and Cheeseman, 19 N.J. Eq. 537 (E. & A. 1868), our courts have refused enforcement of affirmative covenants, as stated in De Gray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329 (Ch. 1892) by Vice Chancellor Green, pages 332 and 333:
"It is settled that a court of equity will restrain the violation of a covenant, entered into by a grantee, restrictive of the use of lands conveyed, not only against the covenantor, but against all subsequent purchasers of the lands with notice of the covenant, irrespective of the questions whether the covenant is of a nature to run with the land, or whether it creates an easement; provided, however, that its enforcement is not against public policy. Tulk v. Moxhay, 2 Phil. 774 (said by Brett, L.J., in Haywood v. Brunswick Building Society, 8 Q.B. Div. 403, 407, to be the leading case on the subject); Mann v. Stephens, 15 Sim. 376; Bristow v. Wood, 1 Coll. 480; Coles v. Sims, 5 De G., M. & G. 1; Wilson v. Hart, L.R. (1 Ch. App.) 468; Fielden v. Slater, L.R. (7 Eq. Cas.) 523; Richards v. Revitt, 7 Ch. D. 224; Patman v. Harland, 17 Ch. D. 359; Brewer v. Marshall, 4 C.E. Gr. 537; Winfield v. Henning, 6 C.E. Gr. 188 Coudert v. Sayre, 1 Dick. Ch. Rep. 386. * * *
This rule of equity being an encroachment on the general doctrine of the common law that the burden of a covenant does not run with the land (Spencer's Case, 1 Sm. Lead. Cas.; Austerberry v. Corporation of Oldham, 29 Ch. D. 750), its application is not to be extended beyond the class of cases in which it has been heretofore enforced (Brewer v. Marshall, supra, at p. 546), and is to be confined to negative covenants. [Emphasis supplied.] Hayward v. Brunswick Building Society, supra; Hall v. Ewin, 37 Ch. D. 74; London & S.W. Ry. Co. v. Gomm, supra."
The apparent dearth of cases dealing with affirmative covenants in our State and others, as contrasted with the multitude of cases concerned with restrictive or negative covenants, clearly shows the reluctance of our courts to enforce them, as a consequence of which property owners *417 have not attempted to control the uses of their lands by their inclusion as conditions or restrictions.
Plaintiff further attempts to enforce this covenant on the basis of an equitable easement upon the showing that the same was contained in all deeds to the original large tract of land and is, therefore, for the mutual benefit of all present property owners. The language of the covenants is clear and unambiguous, and the principle of equitable easement has only been used when there is ambiguity or an undeclared purpose for such an easement. Coudert v. Sayre, 46 N.J. Eq. 386 (Ch. 1890); Clarke v. Kurtz, 123 N.J. Eq. 174 (E. & A. 1938).
Plaintiff's second count asks the court to enter a mandatory injunction to require defendants to remove certain trees, bushes and shrubs which have been planted and maintained within the street area which would be occupied by the sidewalks if in place, on the ground it makes the general public walk within the cartway of the street rather than upon the area reserved for sidewalks.
As stated in McHugh v. Hawthorne B. & L. Ass'n, 118 N.J.L. 78 (Sup. Ct. 1937):
"By force of the common law, every part of the street is so dedicated to the public that any act or obstruction which, when left unprotected, unnecessarily incommodes or impedes its lawful use by the public is a nuisance. Durant v. Palmer, 29 N.J.L. 544."
So there can be no question but that defendants' maintenance of these plantings within the street area is a nuisance. However, is this plaintiff a proper party to abate such a nuisance by this suit? Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 581 (1950) says:
"An individual cannot maintain a suit to restrain a nuisance which injures him only in his rights enjoyed by him as one of the public, but in such case information must be filed for the public in the name of the Attorney-General, on behalf of the State, and it makes no difference as to the remedy that the individual would be much more inconvenienced by the nuisance than most of the others."
*418 This proposition was followed by Judge Clapp in Warren Foundry and Pipe Corp. v. Meriden Stone Co., 32 N.J. Super. 254 (App. Div. 1954), wherein he said:
"It has been repeatedly held that an individual cannot sue to enjoin an interference with public rights in a road unless he suffers a special injury. The remedy for the public wrong is by way of indictment or at the suit of the Attorney-General. Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580 (1950); Morris and Essex Railroad Company v. Prudden; 20 N.J. Eq. 530 (E. & A. 1869). As held in the Poulos case, a very great inconvenience to an individual is not a special injury within the rule.
The ramifications of this doctrine do not concern us here. The narrow question before us is whether the above-stated obstructions on the public road, preventing plaintiff from using it in an easterly direction, constitute a special injury to the plaintiff because it owns property located on the road west of the obstruction. The Poulos case is conclusive on the point. The plaintiff here claims no injury except to a right (to use the words of that case) `which (it) enjoys with other members of the public.' This, it seems, is so obvious as not to require any demonstration."
Upon the conclusions above stated, the plaintiff's complaint will be dismissed, with costs.