**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0474-19

EDWARD RABBITT,
EILEEN RABBITT, and
GERARD SWEENEY,

      Plaintiffs-Respondents,

v.

JOHN GREED and
THERESA GREED,

      Defendants-Appellants.

_____

Argued October 15, 2020 – Decided April 12, 2021

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Cape May County, Docket No. C-000032-18.

Anthony Argiropoulos argued the cause for appellants (Epstein Becker & Green, PC, attorneys; Anthony Argiropoulos, of counsel and on the briefs; Robert M. Travisano and William Gibson, on the briefs).

Mark P. Asselta argued the cause for respondents (Brown & Connery, LLP, attorneys; Mark P. Asselta, on the brief).

PER CURIAM

This appeal requires that we determine the validity of the trial court's interpretation of a setback deed restriction. Defendants John Greed and Theresa Greed argue the court erroneously interpreted the deed restriction, the restriction is ambiguous and therefore unenforceable, and the court erred by considering extraneous evidence to support its interpretation of the restriction. We affirm.

I.

In 2017, defendants purchased a home on beachfront property located on the south side of the eastern terminus of East 15th Street in Avalon.[1] The existing home on the property was set back twenty-five feet from the right-of-way line of East 15th Street. Defendants planned to demolish the home and replace it with a substantially larger home, a portion of which was to be constructed less than twenty-five feet from East 15th Street's right-of-way line.

---

[1] Defendants' property is designated as Block 15.01, Lots 19.02/20.02 on Avalon's tax map.

Defendants' property is subject to a 1967 deed restriction that is at the center of the dispute between the parties. The deed restriction requires that the property have "a 25[-]foot streetside setback from 15th Street."[2]

Following their purchase of the property, defendants demolished the existing home and applied to the New Jersey Department of Environmental Protection and the Borough of Avalon for permits for the construction of the planned larger home. As part of the permit application process, the owners of nearby properties were notified about the planned construction of defendants' new home.

Plaintiff Gerard Sweeney owns the property immediately to the west of defendants' property on the south side of East 15th Street, and plaintiffs Edward Rabbitt and Eileen Rabbitt own the property immediately to the west of Sweeney's property.[3] Plaintiffs objected to the planned construction of defendants' new home. Plaintiffs claimed the home violated the 1967 deed

---

[2] The deed further provides the restriction "shall be binding upon the . . . heirs and assigns" of the grantees to whom the deed conveyed title to the property in 1967. Defendants do not dispute they are assignees of the setback deed restriction as subsequent grantees of the property conveyed by the 1967 deed.

[3] Sweeney's property is designated on Avalon's tax map as Block 15.01, Lots 19.01/20.01 (previously designated as Block 15A, Lots 19A/20A), and the Rabbitts' property is designated as Block 15.01, Lot 16 (previously designated as Block 15A, Lot 16).

restriction because defendants planned to construct part of the home within the twenty-five-foot setback.

Plaintiffs asserted construction of a home within the setback established by the 1967 deed restriction would block the ocean views from their homes. They further claimed the original owners of the three properties included setback restrictions in the deeds conveying title to the three lots to ensure that the home on the lot closest to the beach, now owned by defendants, was built farthest from the street; the home on the second lot from the beach, now owned by Sweeney, was built second farthest from the street; and the home on the third lot, now owned by the Rabbitts, was built closest to the street. Plaintiffs contended the deed restrictions for the three lots established staggered setbacks that ensured the homes on Sweeney's and the Rabbitts' properties enjoyed ocean views unobstructed by the homes closer to the beach.

Plaintiffs filed a complaint and order to show cause seeking a declaratory judgment that the 1967 deed restriction on defendants' property required a twenty-five-foot setback "from the right of way line of 15th Street." Plaintiffs also sought a preliminary and final injunction prohibiting defendants from constructing their home within the designated setback. Plaintiffs further asserted a claim for monetary damages.

4

Defendants interpret the deed restriction differently. They filed an answer to the complaint and a counterclaim seeking a declaratory judgment that their planned new home complied with the 1967 deed restriction. They asserted the setback should be measured from the curb line of 15th Street, and they claimed their planned home complied with the deed restriction because it was set back twenty-seven and one-half feet "from the south curb line of 15th Street."

Defendants also claimed plaintiffs' homes violated the setback deed restrictions applicable to their properties, and that the Rabbitts waived their right to enforce the 1967 deed restriction because Sweeney's home violated a setback restriction in a 1968 deed to his property, and the Rabbitts failed to enforce that deed restriction against Sweeney.

With plaintiffs' application for a preliminary injunction pending, defendants commenced the construction of their new home. The court then heard argument on plaintiffs' request for a preliminary injunction barring defendants from constructing any part of their new home within twenty-five feet of the right-of-way-line of 15th Street. The court granted the requested preliminary injunction, finding plaintiffs satisfied their burden of establishing an entitlement to the relief under the Crowe v. De Gioia, 90 N.J. 126, 132-35 (1982), standard. The court preliminarily enjoined defendants from building on

5

any part of their property "that is set back less than [twenty-five] feet from the right of way line of 15th Street."

At the start of the subsequent bench trial on the parties' claims, defendants moved "to bar [the] introduction of extrinsic evidence at the trial." Defendants argued that because they were not a party to the 1967 deed, the court's interpretation of the deed restriction must be based solely on the deed's plain language and the court could not properly consider extrinsic evidence to determine the intent of the grantor in the 1967 deed. Defendants also claimed the deed restriction is ambiguous as to the place from which the setback should be measured, and the court could not consider extrinsic evidence to resolve the ambiguity. Defendants further argued an ambiguous deed restriction could not be enforced against them.

The court rejected defendants' arguments and denied their motion to bar extrinsic evidence at trial. The court reasoned that it could consider extrinsic evidence as an aid in defining the meaning of the deed restriction's plain language. The court determined it could not consider extrinsic evidence to add to, or change, the terms of the deed restriction as expressed in its plain language.

Following the bench trial, the court issued a detailed and comprehensive opinion summarizing the testimony of the parties and their respective experts.

6

The court found the term "from 15th Street" is the "operative" portion of the deed restriction and that it defines the point from which the setback is measured. The court also found the 1967 deed restriction is not ambiguous and the "plain and obvious" meaning of "from 15th Street" is that the twenty-five-foot setback is measured from the "right of way line" of 15th Street. The court in part relied on plaintiffs' and defendants' experts, who agreed that "15th Street" itself was unambiguous and meant 15th Street as defined by its right-of-way lines.

The court rejected defendants' claim the term "streetside" in the deed restriction means the setback is measured from the curb or the "edge of [the] pavement" or otherwise creates an ambiguity concerning the meaning of "from 15th Street." The court found "streetside" was directional, meaning "'alongside' or 'near the street,'" and that the term did not define the point from which the setback was measured. The court noted defendants had changed their position concerning the meaning of the term at trial, and the court found, based on the unambiguous language of the deed restriction alone, the twenty-five-foot setback should be measured from the right-of-way line of 15th Street.

The court separately considered and analyzed extrinsic evidence concerning the prior transfers of title to the three properties from the original grantees, setback deed restrictions applicable to each of the properties, and the

7

language used in the prior deeds for the properties.  The court concluded the extrinsic evidence provided separate and independent support for its determination the 1967 deed restriction required a twenty-five-foot setback from East 15th Street's right-of-way line fronting defendants' beachfront property.

The court entered a final judgment, which it later amended, granting plaintiffs a declaratory judgment enforcing the 1967 deed restriction and enjoining defendants and their successors in title from "constructing any building or part of any building on [their] property . . . that is less than twenty-five . . . feet from the nearest right of way line of [East] 15th Street."  The court transferred plaintiffs' damages claim to the Law Division, and, based on defendants' request, dismissed the counterclaims with prejudice.  Defendants appeal from the amended final judgment and from the court's denial of their motion to bar the introduction of extrinsic evidence at trial.

II.

Prior to addressing defendants' arguments, we review the legal principles applicable to our consideration of the issues presented.  "Restrictions on the use to which land may be put are not favored in law because they impair alienability."  Bruno v. Hanna, 63 N.J. Super. 282, 285 (App. Div. 1960).  As a result, "courts will not aid one person to restrict another in the use of his [or her]

8

land unless the right to restrict is made manifest and clear in the restrictive covenant." Berger v. State, 71 N.J. 206, 215 (1976) (quoting Bruno, 63 N.J. Super. at 285).

Deed restrictions "are to be construed realistically in the light of the circumstances under which they were created," but "incursions on the use of property will not be enforced unless their meaning is clear and free from doubt." Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J. Super. 111, 114-15 (App. Div. 1961). However, the "primary objective" in construing a restrictive covenant in a deed "is . . . determin[ing] the intent of the parties to the agreement," Bubis v. Kassin, 184 N.J. 612, 624 (2005) (quoting Lakes at Mercer Island Homeowners Ass'n v. Witrak, 810 P.2d 27, 28-29 (Wash Ct. App. 1991)), and "strict construction [of a deed restriction] will not be applied to defeat the obvious purpose of [the] restriction," Bruno, 63 N.J. Super. at 287.

The interpretation and construction of a deed is a matter of law that we review de novo. Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 528 (App. Div. 2003). We analyze a deed restriction "in accordance with the principles of contract interpretation, which include a determination of the intention of the parties as revealed by the language used by them." Id. at 527; see also Homann v. Torchinsky, 296 N.J. Super. 326, 334 (App. Div. 1997)

A-0474-19

(explaining "[a] restrictive covenant [in a deed] is a contract" (first alteration in original) (quoting Weinstein v. Swartz, 3 N.J. 80, 86 (1949))). Where, as here, we are required to interpret a deed restriction intended to bind purchasers of property who are strangers to the transaction in which the restriction was imposed, "the intent of the restriction must manifest itself in the language of the document itself. If ambiguity remains, it cannot be resolved, as would be the case if the initial signatories disputed an ambiguous term, by resort to extrinsic evidence . . . ." Cooper River Plaza, 359 N.J. Super. at 527 (footnote omitted); see also Freedman v. Sufrin, 443 N.J. Super. 128, 131-32 (App. Div. 2015).

"An intention disguised by an ambiguity cannot bind a subsequent purchaser who, as the result of an absence of clarity in the instrument of conveyance, lacks notice of restrictions that the initial parties have attempted to place on the property . . . conveyed." Cooper River Plaza, 359 N.J. Super. at 527: see also Sullivan v. Port Auth. of N.Y. & N.J., 449 N.J. Super. 276, 283 (App. Div. 2017) ("We review issues of law de novo and accord no deference to the trial court's legal conclusions."). That principle is consistent with our contract law, "which require[s] sufficient definiteness of terms so that the performance required of each party can be ascertained with reasonable certainty, as well as knowledge of and acquiescence in the stated terms." Ibid. The

principle also honors "the central public policy underlying New Jersey's Recording Act: that 'a buyer . . . of real property should be able to discover and evaluate all of the . . . restrictions on the property' from a review of the public record." Id. at 527-28 (alterations in original) (quoting Aldrich v. Schwartz, 258 N.J. Super. 300, 307 (App. Div. 1992)).

Ambiguity arises "if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Id. at 528 (quoting Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp., 31 F. Supp. 2d 389, 398 (D.N.J. 1998)). It is for the court to decide as a matter of law whether the terms of a contract are "clear or ambiguous." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).

Guided by these principles, we discern no basis to reverse the court's determination that the plain and unambiguous language of the restrictive covenant requires a twenty-five-foot setback measured from the right-of-way line of East 15th Street. Defendants do not dispute the deed restriction requires a twenty-five-foot setback. Nor could they. The plain language of the restriction – "a 25[-]foot streetside setback from 15th Street" – requires it. Thus, the grantors in 1967 intended a twenty-five-foot setback on the property, and we

11

will not apply a strict construction of the deed restriction that defeats their clearly stated purpose. Bruno, 63 N.J. Super. at 287.

Defendants do not dispute a setback is a designated area on a property within which no building may be constructed, and which is measured from a particular point or place. See, e.g., Roehrs v. Lees, 178 N.J. Super. 399, 401 (App. Div. 1981) (determining the enforceability of a deed restriction requiring a twenty-five-foot setback from a property line); Graves v. Bloomfield Plan. Bd., 97 N.J. Super. 306, 312 (Law Div. 1967) (measuring the setback point "from the street line"); Tambone v. Bd. of Appeal of Stoneham, 203 N.E.2d 802, 804 (Mass. 1965) ("[I]n general, setback requirements . . . refer to distances from street lines, lot lines, or existing structures, rather than from zoning boundaries."); see also Black's Law Dictionary 1648 (11th ed. 2019) (defining a setback as "[t]he minimum amount of space required between a lot line and a building line"). Defendants argue only that the setback required by the 1967 deed restriction is ambiguous because the particular point or place from which the setback is measured cannot be clearly determined from the restriction's plain language.

We agree with the court's determination that the term "from 15th Street" is the operative language in the 1967 deed restriction because it defines the point

12

or place from which the twenty-five-foot setback is measured. "[F]rom 15th Street" are the only words in the deed restriction specifying a point or place "from" which the setback is measured. The language provides the essential starting point for measuring the required twenty-five-foot setback. In addition, inclusion of the operative language, "from 15th Street," in the deed restriction is consistent with what defendants concede is the plain meaning of a setback restriction—an area measured from a point or place within which no building construction is permitted on their property. As the trial court found, the deed's plain and unambiguous language requires a twenty-five-foot setback measured "from 15th Street."

Defendants claim the deed restriction is ambiguous because the term "15th Street" is not defined. They also contend the deed restriction is ambiguous because, although the setback is clearly to be measured "from 15th Street," the deed restriction does not identify the specific portion of 15th Street from which the twenty-five-foot setback must be measured.

Defendants' argument ignores the plain meaning of the language used in the deed restriction. In their brief on appeal, defendants concede that "the legal definition of '15th Street' . . . includes the entire 60[-]foot area between [its] two

13

right-of-way lines, or property lines."[4]   Thus, as defendants recognize, by definition, "15th Street" exists between its right-of-way lines which, along defendants' property facing the street, are contiguous with defendants' property lines.   The court found, and we agree, application of this definition of "15th Street" to the deed restriction permits only a single reasonable and logical conclusion: the twenty-five-foot setback on defendants' property is measured from 15th Street's right-of-way line that is contiguous to defendants' property line.

Defendants attempt to infuse ambiguity into the deed restriction's plain language by arguing that since 15th Street includes a sixty-foot swath between its right-of-way lines that includes a sidewalk, gutter, curbing, and a paved roadway, the deed restriction's reference to "15th Street" can be logically read to refer to any of those physical features within 15th Street's sixty-foot width. Defendants claim the deed restriction's reference to "15th Street" ambiguously permits the conclusion that the curb, sidewalk, gutter, or other places within the

---

[4]   This definition of "15th Street" is further supported by the testimony of plaintiffs' and defendants' respective experts at trial.  They each testified "15th Street" by itself is defined by its "right-of-way" lines that are contiguous with defendants' property lines fronting 15th Street.

street's sixty-foot-wide area may be reasonably used as the point from which the setback should be measured.

We will not torture the language of a restrictive covenant to create ambiguity, as defendants' proffered interpretation of the deed would require. See Stiefel v. Bayly, Martin & Fay of Conn., Inc., 242 N.J. Super. 643, 651 (App. Div. 1990) (explaining a court "should not torture" the reading of a contract "to create [an] ambiguity"). We must interpret the deed restriction reasonably and in context, and to give effect to its plain language. See, e.g., Schor, 357 N.J. Super. at 191 (explaining interpretation of a contract requires consideration of "the document as a whole" and application of the plain and ordinary meaning of its terms). Defendants' interpretation of the restriction ignores that the setback must be twenty-five feet "from 15th Street." To give effect to this plain language, the setback must necessarily be "from" the street's right-of-way lines. A point within the street's right-of-way lines could not logically provide the starting point or place from which to measure the setback because using such a measure necessarily results in a setback that is less than twenty-five feet "from" the street or, under certain circumstances, within the sixty-foot width of the street itself.

A-0474-19

For example, a setback measured from ten feet inside the street's right-of-way line, perhaps from a curb or gutter line, would result in a setback that is only fifteen feet "from 15th Street." A setback measured from the center line of the sixty-foot-wide street would result in no setback at all because twenty-five feet from the street's center would place a portion of the setback within the street's right-of-way lines. Those examples illustrate the illogic and unreasonableness of defendants' proffered interpretation of the deed restriction's plain and unambiguous language. The required setback can only be twenty-five feet "from 15th Street" if the setback is measured from 15th Street's right-of-way lines. To hold otherwise would violate the deed restriction's clear and unambiguous requirement that there be a twenty-five-foot setback "from 15th Street."

Defendants also claim the term "streetside" in the deed restriction creates an ambiguity rendering the restriction unenforceable against them. The argument ignores the simple sentence structure of the deed restriction. The deed restriction defines the starting point for the measurement of the setback; it is "from 15th Street." The term "streetside" is not included within the deed restriction's delineation of the setback's starting point. The restriction does not provide that the twenty-five-foot setback is "from the streetside." To the

16

contrary, and as we have explained, the setback is measured "from 15th Street." The deed restriction permits no other reasonable conclusion. We therefore reject defendants' claim the term "streetside" renders the deed restriction's operative language—"from 15th Street"—ambiguous.

Defendants illogically argue "streetside" is a word that lacks any clear meaning and, at the same time, contend it should be interpreted to mean that the setback is measured from the curb or street's gutter because they are to the side of the paved roadway or street. Again, defendants ignore that "streetside" is not included within the deed restriction's operative language—"from 15th Street"— defining the place from which the setback is measured.

In addition, in their effort to contort the plain language of the deed restriction into an alleged ambiguity, defendants ignore that even if "streetside" in part defined the location from which the setback is measured, "streetside" can only logically be interpreted to mean to the side of 15th Street. Thus, a setback that is to the side of 15th Street must, for the reasons we have explained, necessarily be to the side of the right-of-way lines that define 15th Street. There is no language in the deed restriction suggesting the setback should be measured from some interior part the street, such as a curb or gutter, and, therefore, defendants' argument is founded on an attempt to inject into the deed restriction

17

language the grantor opted not to include and that the court is without authority to incorporate. See, e.g., James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950) (explaining a court may not remake or alter a contract to make it different than the contract made by the parties). The deed restriction simply, clearly, and unambiguously refers only to 15th Street, which, by definition, exists between its right-of-way lines.

Giving effect to the deed restriction's plain language, a "streetside" setback "from 15th Street" must, for the reasons we have explained, be measured from the street's right-of-way lines. Indeed, the setback could only be alongside the street if it exists next to the street, and, here, 15th Street is defined by its right-of-way lines. The deed restriction's plain language does not support any other interpretation. Defendants' effort to convert that simple and straightforward language into something vague or ambiguous strains credulity and is unavailing. As noted, an ambiguity exists where the terms of the deed restriction "are susceptible to at least two reasonable alternative interpretations." Cooper River Plaza, 359 N.J. Super. at 528 (quoting Assisted Living Assocs., 31 F. Supp. 2d at 398). Defendants do not offer a reasonable alternative interpretation of the deed restriction here.

A-0474-19

In any event, the deed restriction's plain language does not permit a reasoned conclusion "streetside" defines the place from which the setback is measured. If that result had been intended, the term "streetside" would have followed the word "from." We agree with the trial court that "streetside" simply provides directional context for the setback the deed restriction otherwise expressly and plainly provided would be measured "from 15th Street." That is, "streetside" means nothing more or less than that on the side of defendants' property along 15th Street, there is a twenty-five-foot setback "from 15th Street." But cf. Cooper River Plaza, 359 N.J. Super. at 528 (finding ambiguous a deed restriction providing for a setback from a "building line" because the building had four sides and it was not possible to determine whether the "building line" facing the street was the building line intended).

There is nothing in the deed restriction supporting defendants' claim that "streetside" means alongside the curb, next to the gutter, or near the paved street, and, as we have explained, the deed restriction's plain language alone supports the trial court's conclusion that the 1967 deed reserved a twenty-five-foot setback measured from 15th Street's right-of-way line. We therefore affirm the trial court's determination and final judgment.

19

Defendants also argue the trial court erred by denying their motion to exclude extrinsic evidence at trial. They correctly contend extrinsic evidence is inadmissible to resolve ambiguities in a deed restriction where, as here, the purchasers of the property were not parties to the original deed containing the restriction. See id. at 527-28; see also Freedman, 443 N.J. Super. at 131 ("'[T]he meaning of a restrictive covenant will not be extended by implication and all doubts and ambiguities must be resolved in favor of the owner's unrestricted use of the land.' This standard remains unchanged." (quoting Bruno, 63 N.J. Super. at 287)).

In Bubis, however, the Supreme Court relied on extrinsic evidence, including various dictionary definitions, to determine the "plain and obvious meaning" of the word "fence" in a deed restriction limiting the use of property of a purchaser who was not party to the deed containing the restriction. 184 N.J. at 617, 620-24. The Court noted the requisite strict construction of a deed restriction "has its limitations" and must yield to an interpretation that does not "defeat[] the plain and obvious meaning of the restriction." Id. at 624 (quoting Lakes, 810 P.2d at 29. The Court relied on extrinsic evidence to "interpret [the word 'fence'] consistent with the general understanding of the word." Ibid. As explained in Cooper River Plaza, where there is a clear, plain meaning to a term,

20

it is sufficient to bind subsequent purchasers because the term provides adequate notice of the restriction.  359 N.J. Super. at 527.

Here, we find no error in the trial court's admission of the extrinsic evidence—the testimony of the parties' respective experts—establishing the plain and ordinary meaning of the term "15th Street."  The testimony was not admitted to resolve an ambiguity in the deed restriction.  It was properly admitted to establish the plain and ordinary meaning of "15th Street."  See generally Bubis, 184 N.J. at 624.

The trial court determined the deed restriction was not ambiguous and, for that reason alone, concluded defendants are required to maintain a twenty-five-foot setback from 15th Street's right-of-way line.  The court separately considered extrinsic evidence—including the history of the prior transfers of the parties' properties, the deed restrictions applicable to the properties, and the development of 15th Street—and determined the evidence independently supported its interpretation of the 1967 deed restriction.  Defendants argue the court erred by denying its motion to bar the extrinsic evidence and by relying on it to support its decision.

It is unnecessary that we address defendants' argument because, for the reasons we have explained, the court correctly determined the deed restriction's

A-0474-19

plain language requires enforcement of the twenty-five-foot setback from 15th Street's right-of-way line.[5] The court's reliance on the extrinsic evidence as an alternative basis for its conclusion is therefore of no moment. On appeal, we determine the validity of the court's order, not its reasoning. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (explaining "appeals are taken from orders and judgments and not from . . . reasons given for the ultimate conclusion"). Here, we affirm the court's final judgment based on the deed restriction's plan language alone.

     Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] For the same reason, we do not address plaintiffs' claim defendants are judicially estopped from arguing extrinsic evidence should have been barred at trial because defendants relied on the extrinsic evidence during the pretrial proceedings, including the proceedings that resulted in the court's entry of a preliminary injunction against defendants' construction within the twenty-five-foot setback.

A-0474-19