**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3678-24

THOMAS F. MILLEA and
CECELIA M. MILLEA,

     Plaintiffs-Appellants,

v.

VAMSEE DEVIREDDY and
THEJASWINI VEERAPALLI,

     Defendants-Respondents.

_____

> Argued June 3, 2026 – Decided June 22, 2026
>
> Before Judges Mayer, Gummer, and Vanek.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Burlington County, Docket No. C-000057-24.
>
> Douglass F. Sclar argued the cause for appellants (Sclar & Sclar, LLC, attorneys; Douglass F. Sclar, on the brief).
>
> Carl D. Poplar (Carl D. Poplar, PA) argued the cause for respondents.

PER CURIAM

This appeal is the latest round of litigation between these neighbors, plaintiffs Thomas F. Millea and Cecelia M. Millea and defendants Vamsee Devireddy and Thejaswini Veerapalli, regarding defendants' attempt to construct a fence in their backyard.[1] In Millea v. Devireddy, No. A-3050-21 (App. Div. June 6, 2023), we affirmed an order that required defendants to remove a fence they had built in violation of an applicable restrictive covenant. Id. at 8, 13. After removing that fence, defendants obtained written consent from more than sixty percent of lot owners within their development to modify the covenant to allow them to install a fence. They recorded the modification and installed a new fence. Plaintiffs sued for the removal of that fence and now appeal an order denying their summary-judgment motion and granting defendants' cross-motion for summary judgment. Based on our de novo review, we affirm.

I.

Plaintiffs are the owners of property located in a residential community known as Laurel Creek in Moorestown; defendants are the owners of adjacent property. The parties own their respective properties in fee simple. Their houses

_____

[1] The spelling of Mrs. Millea's first name varies in the record. We reference her by the spelling used in plaintiffs' merits brief.

"were constructed as part of a large single-family home subdivision" (Development). Id. at 2.

A Declaration of Protective Covenants, recorded in 1997 (Covenant), prohibited lot owners in the Development from, among other things, erecting fences without the "prior written consent and design approval" of grantor Laurel Creek, L.P. The Covenant contained the following provision regarding its duration, modification, and termination:

> TERM: This Declaration and the covenants, restrictions and agreements set forth herein shall run with the land and shall be binding upon each lot owner and such lot owner's successors and assigns, subject to the right of said lot owners to modify or terminate this Declaration in whole or in part by agreement in writing of at least sixty (60%) percent of the then current lot owners; provided, however, this Declaration may not be terminated or modified by said lot owners in any manner whatsoever until the last home to be built on the [p]roperty by Grantor has been settled . . . .

The Development was completed in approximately 2003.

In 2021, plaintiffs filed a complaint in the Chancery Division, seeking removal of a fence defendants had installed on defendants' property. Deciding the parties' summary-judgment motions, the court held defendants had violated the Covenant, which was valid and enforceable, by installing the fence and ordered its removal. We affirmed in a June 6, 2023 decision. Millea, slip op. at

3

13.  In a June 19, 2023 order, the trial court vacated an earlier stay and required the removal of the fence.  Defendants removed the fence on August 21, 2023.

In June and July 2023, defendant Devireddy obtained signatures of Development lot owners on a "[c]onsent [d]ocument," which stated:

> I am currently an owner of a lot and home in the . . . Development in Moorestown, NJ.
>
> I consent and agree to the erection & maintaining of the backyard fence at the home of [defendants] residing at [defendants' property].
>
> I consent & agree to a modification of the protective covenant that is or may be necessary to permit the erection & maintaining of the backyard fence at [defendants' property].

A "Modification of Declaration of Protective Covenants" (Modification) was recorded in the Burlington County Clerk's Office on April 15, 2024.  The Modification provided, in relevant part:

> WHEREAS, there currently exists Three Hundred Four (304) lots within the . . . Development; and
>
> WHEREAS, One Hundred Eighty (180)[2] lot owners or 62.5% . . . have consented and agreed to the

---

[2]  The court found the reference to 180 lot owners was an error and that 203 lot owners had signed the consent document.  Plaintiffs do not dispute that factual finding or that "203 is 60% more than 304," the total number of homes in the Development.

erection and maintenance of the backyard fence at the home of [defendants] . . .

WHEREAS, Vamsee Devireddy . . . personally witnessed each of the lot owners' signatures for the consent and agreement of the erection and maintaining of the backyard fence at the home of [defendants] . . . and a Modification . . . that may be necessary to permit the erection and maintenance of the fence at [defendants' property]; and

WHEREAS, presently there are One Hundred Three (103) lot owners who have non-opaque fences surrounding their back yard and/or side yards; and

. . . .

WHEREAS, the [Covenant] is herein modified consistent with the consents and agreements of in excess of 60% of the current lot owners to permit the installation and maintenance of a non-opaque fence of [defendants] . . . and should add to that section applicable to be modified the section regarding fence[s] . . . shall be modified to provide that[:]

> Lot owners shall be permitted to erect and maintain a fence compatible with the existing fences that do not block one's view of any other structure that will in any way prohibit the free view of the property. . . .

The Modification contained the executed certification of defendant Devireddy, stating he had "personally witnessed the signatures of the written consents and agreements of the lot owners . . . who agree to the erection and maintenance of the backyard fence at the home of [defendants] . . . and consent and agree to this

Modification . . . ." The Covenant was attached to the Modification along with an index of the lot owners who had executed the consent document. Defendants installed a fence in their backyard after obtaining a zoning permit authorizing its construction.

On June 26, 2024, plaintiffs filed a verified complaint, alleging defendants had constructed a fence in violation of the June 19, 2023 order. Plaintiffs sought, among other relief, a judgment requiring defendants to immediately remove the fence. In their answer, defendants asserted the fence was installed pursuant to a valid and recorded Modification authorizing its installation.

Plaintiffs subsequently moved for summary judgment, arguing the Modification was invalid because in their attempt to modify the Covenant, defendants had failed to comply with the Planned Real Estate Development Full Disclosure Act (PREDFDA), N.J.S.A. 45:22A-21 to -56, and "accepted practices and due process necessary to amend the Covenant." Defendants opposed plaintiffs' motion and cross-moved for summary judgment. In support of defendants' submission, defendant Devireddy certified that, when the first lawsuit was filed, 104 fences already existed in the Development and additional fences had been installed since then. Defendants argued PREDFDA did not apply and the prior restriction on the installation of fences was unenforceable

6

due to the valid Modification and the abandonment of the restriction as evidenced by the number of fences existing in the Development and lot owners' consent to the installation of fences.

After hearing argument, the court entered a June 10, 2025 order denying plaintiffs' motion and granting defendants' cross-motion. In an accompanying statement of reasons, the court found plaintiffs had failed to present evidence demonstrating the Development was a planned real estate development subject to the procedural requirements of PREDFDA. Accordingly, the court held the procedure to amend the Covenant was not governed by PREDFDA but by the language of the Covenant itself. That language permitted amendment on the written consent of at least sixty percent of the lot owners. The court determined defendants had established they met that required threshold. The court, however, found the language of the Modification differed from the language of the consent document, which provided for fence installation only on defendants' property and not throughout the Development. Consequently, the court reinstated the language of the Covenant and directed defendants to "insert a new paragraph setting forth the consent they received and nothing more." Lastly, the court concluded that because defendants had satisfied the amendment requirements under the Covenant, the abandonment issue was moot.

On appeal, plaintiffs argue the court erred in its interpretation of PREDFDA, requiring a remand with an instruction the court "properly evaluate" PREDFDA's application to the modification of the Covenant. Plaintiffs also contend the court should have found on an equitable basis that defendants had to follow PREDFDA's procedural requirements or similar requirements in attempting to modify the Covenant, even if PREDFDA did not apply. Unpersuaded by those arguments, we affirm.

II.

"We review a grant of summary judgment de novo, applying the same standard that governed the trial court's determination." Padilla v. Young Il An, 257 N.J. 540, 547 (2024). Summary judgment is proper if, viewing the evidence in a light most favorable to the non-moving party, the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)).

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky

Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)); see also R. 4:46-2(c). To rule on summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)).

PREDFDA "was enacted in 1977 to regulate the sale of residential real estate developments of 100 units or more in which unit owners share common elements, facilities, areas or interests." Dep't of Cmty. Affs. v. Atrium Palace Syndicate, 244 N.J. Super. 329, 330 (App. Div. 1990). The statute and its associated regulations, N.J.A.C. 5:26-1.1 to -11.11, require qualifying developments to register with the Department of Community Affairs (DCA), issue a public offering statement, and establish an association responsible for managing the development's common elements and facilities. See, e.g., N.J.S.A. 45:22A-26 to -28, -43; see also Poblette v. Towne of Historic Smithville Cmty. Ass'n, 355 N.J. Super. 55, 64 (App. Div. 2002) (finding PREDFDA requires registration, a public offering, and the creation of an association).

9                                                                    A-3678-24

N.J.S.A. 45:22A-23(h) defines "[p]lanned real estate development" or "development" as:

> any real property situated within the State, whether contiguous or not, which consists of, or will consist of, separately owned areas, irrespective of form, be it lots, parcels, units, or interests, and which are offered or disposed of pursuant to a common promotional plan, and providing for common or shared elements or interests in real property. This definition shall not apply to any form of time sharing.
>
> This definition shall specifically include, but shall not be limited to, property subject to the "Condominium Act," [N.J.S.A. 46:8B-1 to -38], any form of homeowners' association, any housing cooperative or to any community trust or other trust device.

Construing that definition "liberally," ibid., and viewing the evidence in a light most favorable to plaintiffs, we agree with the court's conclusion plaintiffs failed to demonstrate the Development is governed by PREDFDA or that a genuine issue of material fact exists regarding that issue.

Plaintiffs did not support their assertion regarding the application of PREDFDA with any documentation regarding the founding of the Development or establishing the existence of ownership interests in any alleged common elements, registration with the DCA, a public offering statement, a homeowners' association, or other hallmarks of a "[p]lanned real estate development" under

10

PREDFDA.  They rely solely on the following factual statement made in their summary-judgment brief: "There are several entrances to the Laurel Creek community which are common to all lot owners and require maintenance.  All lot owners are invoiced an annual maintenance fee for upkeep of the common area entrances."  To support that factual assertion, plaintiffs cited the "Millea Certification."  They did not include a copy of that certification in the appellate record.  They did not provide any other information or documentation about the "common area entrances" or their upkeep.  Defendants included in the record a letter from the Laurel Creek Country Club, not a homeowners' association, asking residents to consider making voluntary contributions towards the maintenance and "beautification" of the entrances to the Development.

Even accepting plaintiffs' factual assertion regarding the entrances to the Development as true, that fact alone is insufficient to establish the Development constituted a "[p]lanned real estate development" subject to PREDFDA or that a genuine issue of material fact exists as to that issue.  Accordingly, the court appropriately turned to the language of the Covenant to determine the validity of the Modification.

"[A] restrictive covenant is a contract" and, therefore, subject to the principles of contract interpretation.  Homann v. Torchinsky, 296 N.J. Super.

11

326, 334 (App. Div. 1997) (quoting Weinstein v. Swartz, 3 N.J. 80, 86 (1949)). "A basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning." Kernahan v. Home Warranty Adm'r of Fl., Inc., 236 N.J. 301, 321 (2019). "[A] rule of strict construction should be applied to the provisions [of a restrictive covenant], unless such a rule would defeat the obvious purpose of the restrictions." Homann, 296 N.J. Super. at 335 (quoting Murphy v. Trapani, 255 N.J. Super. 65, 72 (App. Div. 1992)); see also Freedman v. Sufrin, 443 N.J. Super. 128, 131 (App. Div. 2015) (finding restrictive covenants "are always to be strictly construed" (quoting Bruno v. Hanna, 63 N.J. Super. 282, 285 (App. Div. 1960))). In construing a restrictive covenant, courts "find the intention of the parties as revealed by the language used by them" and interpret "the language used . . . 'in accord with justice and common sense.'" Homann, 296 N.J. Super. at 334 (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)). "'Where the terms . . . are clear and unambiguous there is no room for interpretation or construction' and the courts must enforce those terms as written." Id. at 336 (quoting Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987)).

The provisions of the Covenant governing the procedure to modify its terms are clear and unambiguous. On the completion of the "last home" in the

Development, lot owners could modify the terms of the Covenant "by agreement in writing of at least sixty (60%) percent of the then current lot owners." It is undisputed that after the last home in the Development was built, at least sixty percent of the then current lot owners agreed in writing to modify the Covenant to allow defendants to install a fence on their property.

Plaintiffs fault the court for not imposing additional procedural requirements for the modification of the terms of the Covenant. But adding terms to a restrictive covenant is beyond a court's authority. A "court has no right 'to rewrite the [covenant] merely because one might conclude that it might well have been functionally desirable to draft it differently.'" Ibid. (quoting Brick Twp. Mun. Util. Auth. v. Diversified R. B. & T. Constr. Co., 171 N.J. Super. 397, 402 (App. Div.1979)). A court may not impose restrictions beyond those "manifest and clear" in the covenant itself. Freedman, 443 N.J. Super. at 131 (quoting Bruno, 63 N.J. Super. at 285).

Plaintiffs contend due-process concerns mandate the equitable imposition of additional procedural requirements to modify the Covenant. We disagree. "In examining a procedural due process claim, we first assess whether a liberty or property interest had been interfered with by the State . . . ." Thomas Makuch, LLC v. Township of Jackson, 476 N.J. Super. 169, 185 (App. Div. 2023)

13

(quoting <u>Doe v. Poritz</u>, 142 N.J. 1, 99 (1995)).  This case does not involve State action.  Moreover, the record is devoid of any evidence the lot owners who signed the consent document were in any way misled, misinformed, or inadequately advised about what they were signing.  The consent document clearly provided the signor was consenting to "the erection [and] maintaining of the backyard fence at the home of [defendants]" and "a modification of the . . . [C]ovenant that is or may be necessary to permit the erection [and] maintaining of the backyard fence at [defendants' property]."  Defendants' one misstep – including language in the Modification that was broader than the language in the consent document – was corrected by the court when it restored the language of the Covenant and directed defendants "to insert a new paragraph" consistent with the consent document "and nothing more."

Finally, we note defendants, who did not cross-appeal, again argue the provision of the Covenant regarding fences is no longer enforceable because it was abandoned.  The court did not reach that issue, having found the Modification was valid.  Similarly, we do not address the abandonment argument, having affirmed the June 10, 2025 order based on the court's determination of the Modification's validity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

14

A-3678-24